673 P.2d 1059

**Wilber E. DEFORD, Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 14423.**

Supreme Court of Idaho.

Dec. 1, 1983.

---

William B. Taylor, Jr., Grangeville, for petitioner-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

BAKES, Justice.

A criminal complaint charging appellant Deford with grand larceny was filed in Idaho County in October, 1977, and a warrant for his arrest was issued. Deford was arrested in Iowa, but thereafter was released to federal authorities who transported him to Boise, Idaho, apparently for unrelated federal charges. On January 2, 1978, Deford was convicted and sentenced by the United States District Court in Boise to two years in the McNeil Island federal penitentiary.

The State of Idaho lodged a detainer at the federal prison in Washington state. Deford claims that he sent Idaho County authorities written requests that he either be tried immediately on the grand larceny charge or that the charge against him be dismissed. In January, 1979, Deford filed a "motion to quash detainer" for failure of the Idaho County authorities to bring Deford to trial on the grand larceny charge. The State of Idaho filed a motion in opposition to the petition to quash detainer, along with affidavits to show that no such written notice was ever received from Deford.

No hearing was held, or disposition made, on these motions concerning detainer.

Deford was released from the federal prison in April, 1979. Idaho initiated extradition proceedings in the State of Washington, but Deford left Washington while the extradition proceedings were pending. Deford went to Florida, and then to Texas, where he was arrested in November, 1979, on the Idaho warrant. Deford waived extradition from Texas, and he was returned to the State of Idaho.

On November 5, 1979, Deford was arraigned in district court. He waived his right to a preliminary hearing, and he waived his right to be represented by an attorney. He then pleaded guilty to the grand larceny charge. The district judge questioned Deford at that time concerning the voluntariness of his plea, and Deford said that he had not been threatened in any way and that he knew he was guilty of the charge.

Deford was sentenced to a ten year term. He appealed to the Idaho Supreme Court, but later made a motion for the appeal to be dismissed, which motion was granted by the Court. Deford subsequently filed this petition for post conviction relief, alleging that he was coerced into waiving his rights and entering a guilty plea to the grand larceny charge. His petition, which was verified, alleged:

"[T]hat his waiver of a preliminary hearing in case no. 13421, and his waiver of right to counsel, and his entry of a guilty plea to the charge contained in the Information filed against him were not done voluntarily by him, but were the result of his being informed by the Chief Deputy Sheriff of Idaho County, shortly after his waiver of extradition from Texas, that the prosecution would file a persistent violator felony charge against him in Idaho County, unless the petitioner pleaded guilty to the grand larceny charge then pending against him."

He also alleged that he was deprived of his right to a speedy trial. There were no affidavits attached to the petition.

The state filed a motion to dismiss the petition, supporting the motion with an affidavit from the deputy sheriff of Idaho County stating that no such threat or statement was ever made to Deford. The district court held a hearing in which arguments were heard from the state and from counsel representing Deford. It was stipulated at the hearing that the district court could take judicial notice of the record of Deford's previous arraignment and sentencing in the Idaho County district court. The district court dismissed the petition, concluding that the petition presented no substantial issues of fact and had no merit. We affirm.

At the outset we note that the district court did not summarily dismiss Deford's petition for post conviction relief. A summary dismissal based on the pleadings does not require a hearing. I.C. § 19–4906. Neither does a summary dismissal require the court to file findings of fact and conclusions of law. *State v. Christensen,* 102 Idaho 487, 632 P.2d 676 (1981). In this case, a hearing was conducted in which the parties stipulated to the record and presented oral arguments. The trial court made findings and conclusions. Therefore, we conclude that the hearing and order dismissing the petition were pursuant to the procedures provided for in I.C. § 19–4907, and not the result of a summary dismissal under I.C. § 19–4906(c).

Deford argues that the district court erred in not granting him a full evidentiary hearing at which he would be permitted to appear and testify. I.C. § 19–4907(b) states:

"**19–4907. Hearing—Evidence—Order—presence of applicant.—** . . .

"(b) The applicant should be produced at the hearing on a motion attacking a sentence where there are substantial issues of fact as to evidence in which he participated. *The sentencing court has discretion to ascertain whether the claim is substantial* before granting a full evidentiary hearing and requiring the applicant to be present." (Emphasis added.)

The issue presented, then, is whether the court abused its discretion in finding no "substantial issues of fact" and not conducting a "full evidentiary hearing" before ordering the dismissal of the petition for post conviction relief.

Deford did raise an issue of fact in his petition as to whether or not his guilty plea was voluntary. This allegation could be given some weight by the trier of fact since it was given under oath. However, the statement by Deford, that the deputy sheriff coerced the guilty plea by threatening an additional charge, was a conclusory allegation unsupported by any evidentiary detail or corroborated by other evidence. The petition does not refer to any corroborating evidence which could be produced at a hearing to support the allegation.

The state's motion to dismiss was supported by the affidavit by the deputy sheriff stating that no threats of additional charges were ever made toward Deford. In addition to the affidavit of the deputy sheriff rebutting Deford's allegation, the trial court also had before it the record of Deford's arraignment and sentencing. The trial judge, at the post conviction hearing, was the same judge who had presided over Deford's arraignment and sentencing. The judge had the benefit of having observed the demeanor of Deford throughout the arraignment and sentencing. It was stipulated at the hearing that the trial court could take judicial notice of these prior records. In the record of the arraignment, the following exchange took place:

"THE DEFENDANT: Well, this charge has been on me since 1977 when I received federal time out of Boise and was sent to McNeil Island for firearms violation charge, federal government, and it's just been a long drawn out situation and when I was released from the federal penitentiary in April I started fighting extradition procedures from Washington and extradition was after a governor's hearing in the State of Washington, extradition was granted and I left the state. I have been down in Florida—Alabama, Florida for the last about two and a half months. I was on my way back up here

to spend a few days with my wife and son and my intention was to come over here and turn myself in anyhow just to get this whole thing settled. I talked this all over with my wife on the phone from down there before I ever left Florida. . . .

"THE COURT: Has anybody threatened you in any way to get you to plead guilty?

"THE DEFENDANT: No, sir.

"THE COURT: Are you pleading guilty just to get it over with even though you believe that you might be innocent and that you are innocent of the charge?

"THE DEFENDANT: No, Your Honor. I know that I am guilty of the charge. . . .

"THE COURT: When did you decide to plead guilty?

"THE DEFENDANT: Last Wednesday, Your Honor. It was the same date I signed—waived extradition from the State of Texas.

"THE COURT: And the reason that you decided to plead guilty is what you have told me about wanting to get this over with?

"THE DEFENDANT: Yes, basically. Like I say, I talked this over with my wife on the phone. I was on my way back up here when I got arrested in Texas for a faulty muffler on my car.

"THE COURT: Do you feel that you are pleading guilty freely and voluntarily?

"THE DEFENDANT: I do, Your Honor.

"THE COURT: Did you discuss this matter of pleading guilty with anyone besides your wife?

"THE DEFENDANT: No, Your Honor."

 The record before the post conviction court rebutting Deford's uncorroborated allegation of threats was overwhelming, and the trial court was given no reason to believe Deford would produce any new evidence. The trial court exercised its discretion under I.C. § 19–4907(b) and decided that the issue was not substantial. Where the trial court has exercised its discretion after careful consideration of relevant factual circumstances and principles of law, without arbitrary disregard for such facts and principles of justice, the reviewing court will not disturb the action without a clear showing of abuse of discretion. *Lisher v. Krasselt*, 96 Idaho 854, 538 P.2d 783 (1975). We hold that the district court did not abuse its discretion in holding that no substantial issue of fact existed and dismissing the petition without a full evidentiary hearing. The dismissal is affirmed.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Although there is much in the majority opinion with which I have no problem, in sum I am unable to agree with its general tenor or result. The opinion notes that DeFord waived his right to counsel, waived his right to a preliminary hearing, and, unremarkably, then pleaded guilty. The opinion further notes that his petition for post-conviction relief, verified, states that his guilty plea and his waiver of the right to counsel was not voluntary, but coerced under advice from a deputy sheriff that otherwise he would be also charged as a persistent violator. The opinion proceeds to note that the State's motion to dismiss was supported by an affidavit of the deputy sheriff stating that no such threat or statement was ever made. The opinion notes that DeFord had raised an issue of fact as to the voluntariness of his plea by the statement of his petition—which "could be given some weight by the trier of fact"—who was here the same district judge who had accepted defendant's plea as voluntary. At this point the majority opinion then notes— and this obviously is critical to the result achieved—that the judge had "had the benefit of having observed the demeanor of DeFord throughout the arraignment and sentencing." The inference is obvious: The trial court having observed the demeanor of the witnesses was at liberty to believe or disbelieve. In this case, however, that shoe doesn't fit the particular foot. Most, if not all, practicing attorneys will at once see this as an absurdity. True, the trial judge once, at an earlier time, here almost twenty-two

months, saw DeFord, and heard him. That was in another case and at another time. This is not the same case. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550. No value whatever can be placed on earlier "observed demeanor." If anything, the judge obviously believed DeFord when the plea was accepted as voluntary. There was no contrary evidence.

Moreover, in this particular proceeding there were two witnesses, both of whom testified by affidavit. The majority opinion concedes as much in noting that the State's motion to dismiss DeFord's petition was supported by "an affidavit of the deputy sheriff of Idaho County stating that no such threat or statement was ever made." This, so sayeth today's majority, was an *"overwhelming"* record "rebutting DeFord's uncorroborated allegation of threats." Far from overwhelming.[1] The overwhelming affidavit, remarkable more for what it did not say than what it did say, was simply this:

"I, GAYLORD J. COLVIN, having been duly sworn, depose and say:

"1. That, I was the only Chief Deputy Sheriff for the Idaho County Sheriff's Office from Jan. 1977 to Dec. 1980.

"2. That, I am familiar with the grand larceny case against Wilber E. DeFord, Petitioner herein.

"3. That, at no time did I ever indicate to Wilber E. DeFord in any way that the prosecution would not file persistent violator charges against him if he pled guilty to the charge of grand larceny, nor have I ever made any other promises to Wilber E. DeFord or done anything to try and persuade him to plead guilty to any criminal charges."

R., p. 8.

Remarkable, so it seems, because where DeFord had sworn that he was "informed by the Chief Deputy Sheriff . . . that the prosecution would file a persistent violator felony charge against him in Idaho County unless [he, DeFord] pleaded guilty to the grand larceny charge," the deputy in language apparently drawn by the office of the prosecuting attorney[2] says only in the negative that he, the deputy, had not *"indicate[d]* that the prosecution would not file persistent violator charges against him if he pled guilty to the charge of grand larceny." While this sworn statement is undoubtedly true, it is a far cry from swearing under oath that he did not say affirmatively as DeFord declares he said. In a nutshell, DeFord says "I was told I would be charged as a persistent violator"; the deputy does not deny that, and says only "I did not say you wouldn't be." No difference? Not in my book.

But, even if the deputy had met the challenge head-on, like any other confrontation of fact, issue was drawn, and a "live" hearing was required. Not so, says the majority, not where the affidavit statements are *overwhelmingly* against DeFord.

The majority opinion erroneously characterizes DeFord's statement as "a conclusory allegation unsupported by any evidentiary detail or corroborated by other evidence." This is both an inaccurate depiction and a cruel blow carelessly and unnecessarily struck. How DeFord could have expressed himself any more clearly than he did wholly escapes me. The man says that the deputy told him (I presume the word "informed" carries that connotation) that unless he entered a guilty plea to the larceny charge he would be faced with the persistent violator charge. Certainly this is not a mere allegation, and not a conclusion. That DeFord had no corroborating witnesses is in the same category as most rape situations. Seldom is anyone invited to a rape; equally rare will be those occasions when prosecuting attorneys or sheriffs' officers invite a jailed inmate's friends or cellmates to be present at an interview or conversation.

---

1. The trial judge, less accustomed to the use of superlatives than the majority, never declared the evidence overwhelming, but simply stood by his earlier belief that the plea was voluntary when it was accepted.

2. Such is indicated on the affidavit itself in the upper lefthand corner.

And, while the majority opinion makes short shrift of DeFord's "conclusory allegation" it apparently sees nothing amiss ·in the negatively couched response of the deputy which includes. the truly conclusory statement that "nor have I ever made any other promises to ... DeFord or done anything to try and persuade him to plead guilty to any criminal charges." One can infer from that statement that the deputy admits to talking with DeFord. On that basis alone it becomes encumbent on the district judge to convene a court and *hear* from the two witnesses, DeFord and the deputy, what was said by each, from which the court would determine the issue—not the deputy. This the trial judge did not do, but instead merely affirmed his own earlier decision that DeFord had voluntarily pleaded guilty: "I cannot now be persuaded that the allegations of his Petition have any merit .... I find that DeFord's assertions of a coerced plea are totally refuted by his own earlier voluntary statements made at the time of sentencing."

Significantly, and what this appeal is all about, the trial judge did not directly come to grips with the claim that the deputy sheriff influenced DeFord's decision to waive the right of counsel, waive a preliminary hearing, and to enter a guilty plea. That factual issue was not decided. The judge found only that:

"(4) That in spite of DeFord's assertions to the contrary in his petition dated June 30th, 1981, DeFord's waiver of his rights and legal defenses was not the result of any threats or coercion.

"(5) DeFord knowingly, freely and voluntarily entered a plea of . guilty to the grand larceny charge."

R., p. 15.

and noted that when DeFord was before him for sentencing that—when he was asked if "anybody threatened you in anyway to get you to plead guilty?"—DeFord responded with a "No, sir." It is understandable that the district judge would thereafter, some twenty-two months later, be reluctant to hear DeFord's claim that he had been "informed" by the deputy. If

DeFord's sworn petition contains the word "threatened," I am unable to find it. More careful with his language than today's majority, he stated only that he had been informed as to what the prosecution would do if he did not plead guilty. Without there having been the requisite hearing and taking of testimony, it is not possible to know what DeFord had in mind when asked by the district judge if he had been "threatened." He very well may have had in mind the threat of violence, or, and equally likely, he full well understood, or at the least surmised, uncounseled defendant that he was, that if he thought that he had been threatened on being so informed, and so told the court, that his plea would not be accepted. If this did happen, was there anything to then prevent the filing of the persistent violator charge?

Clearly, there should have been a hearing · which included the taking of evidence. Not only was DeFord not allowed his constitutional right to testify in his own behalf, he was also denied the right to have the deputy testify in open court and be subjected to cross-examination. Denied these rights, he was faced with the adverse character testimony of the district judge who found against him, in part, at least, "based upon my personal discussions with DeFord, as shown by the transcript referred to, and based upon my personal observations of De-Ford ..., I cannot now be persuaded that the allegations of his petition have any merit." Finding No. 14, R., p. 17.

DeFord was entitled to a trial. And that trial should have taken place before another district judge. At that trial the judge who had accepted DeFord's plea could have been called as a witness, but he should not have witnessed in any hearing at which he presided. On at least one previous occasion I have said as much to an unresponsive Court. Perhaps defense counsel may be able to catch the ear of the legislature and thereby cure the defect in due process to which this. Court turns a deaf ear.

In a case exactly like this, a unanimous circuit court of appeals, the First Circuit,

experienced no difficulty in meeting the real basic underlying issue:

"This brings us to a more difficult question: whether it is proper for the same district judge who had once made a finding of voluntariness, on inadequate evidence, to take new evidence and, in effect, review the correctness of his own determination. In the continuation of a single proceeding, as on a motion for new trial, important considerations suggest that the hearing should be before the original judge. Here there has been a new proceeding. The court decided the issue of whether the defendant in fact acted voluntarily and with full understanding upon further evidence, predicated upon acknowledged, or assumed, error in its prior decision. We have more than once indicated, without in any way suggesting any personal criticism, that the second trial should be before another trier. See *The Haverhill Gazette Co. v. Union Leader Corp.,* 1 Cir., 1964, 333 F.2d 798, 808, cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343, and cases cited. *This is especially so when the court is reweighing factual inferences and credibility as distinguished from applying rulings on issues of law.*

"It is true that some cases have held that it is inappropriate for a new judge to set in section 2255 matters. E.g. *United States v. Smith,* 4 Cir., 1964, 337 F.2d 49, 53, cert. denied, 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436. On examination we think it can be fairly said that these courts have simply accepted, without discussion, a statement in the per curiam opinion in *Carvell v. United States,* 4 Cir., 1949, 173 F.2d 348, believed attributable to Chief Judge Parker of that circuit, that section 2255 was intended to bring collateral attacks to the original judge. See Parker, Limiting the Abuse of Habeas Corpus, (1948) 8 F.R.D. 171, 172–74. With due respect, we are not persuaded, however, that the judge's connection with the drafting of section 2255 should supplement legislative history that contains no such suggestion, and which demonstrates concern with quite a different

matter. It is true that section 2255 speaks of moving 'the court which imposed the sentence * * *.' We find nothing, however, to indicate that 'court' was used in the restrictive sense of a specific judge. Rather, it appears that section 2255 was intended to supplant habeas corpus proceedings, which could be brought only where the defendant was incarcerated, and to transfer collateral attack to a forum where the record, and most of the relevant witnesses, would be available. See *United States v. Hayman,* 1952, 342 U.S. 205, 10–219, 72 S.Ct. 263 [267–272], 96 L.Ed. 232.

"Nor are we moved by other considerations. The contention that it would be unseemly for a judge to testify in contradiction to a defendant as to a past occurrence in his courtroom, e.g., *United States v. Edwards,* D.D.C.1957, 152 F.Supp. 179, 182 (dictum), aff'd, 103 U.S.App.D.C. 152, 256 F.2d 707, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82, seems to us largely a straw man. The need could normally occur only when there had been no court reporter, and even then it is unlikely that no one but the judge would be available to testify. *In any event, unpleasant as it might be for a judge to testify, we consider it far worse that he should be the trier of fact to determine his own credibility.* Cf. 28 U.S.C. § 455; *In re Murchison,* 1955, 349 U.S. 133, 138–139, 75 S.Ct. 623 [626–27], 99 L.Ed. 942. At least in usual circumstances, assertions that the sentencing judge should review his own findings, either to protect his dignity, or because he is in a special position to supplement the record with his own recollections, seem but little removed from the view, vigorously condemned in *Hayman,* supra, that cursory or limited treatment may be given to proper factual allegations in section 2255 proceedings. See also *Sanders v. United States,* 1963, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. Section 2255 calls upon the court to notice what 'the files and records of the case conclusively show * * *.' *In spite of some remarks in certain cases about the*

*judge's personal recollections* we cannot believe that, unless acquiesced in, they are part of the record in a § 2255 proceeding any more than they would be in any other.

"In sum, there is no authority persuading us to prefer that the sentencing judge conduct an evidentiary hearing o a section 2255 petition challenging the validity of his prior determination under Rule 11 that a plea was made voluntarily and with understanding. We recognize that it is quite another matter to declare him disqualified from conducting such hearings. We do so, not from any feeling of Constitutional compulsion, but from a conviction that the best practice dictates such a policy. It seems to us that hearings on factual issues occasioned by an initial failure to comply with Rule 11 combine whatever ordinary hazards lie in self-review of factual determinations with the danger of improperly interjecting personal recollections of matters outside the record. Were it possible to identify in advance those cases where such a combination of facts would be likely to be present, we might limit our holding to them, but we are persuaded that such a limitation would not be feasible. In saying this we would not be thought to disparage the capacity for objectivity of district judges; rather, we feel that they should be relieved of what we deem the unnecessary burden of deciding when they can properly redetermine factual issues in this particular area. Moreover, it is not unimportant that judicial decision-making not only be fair, but that it so appear to all eyes.

"This interdiction does not mean that the sentencing judge cannot review a § 2255 petition to conclude, if appropriate, that no evidentiary hearing is required. Nor, particularly in a one-judge district, where it is not a simple matter to have the petition heard by a new judge, would there be an objection to an evidentiary hearing before the sentencing judge in order to pass solely on a new issue as, for example, a claim that although Rule 11 was properly observed, the defendant had in fact been subjected to improper extrajudicial influence. The case at bar, however, is not such a case, and the defendant was entitled to a new trier. The judgment is vacated, the findings as to defendant's voluntariness and understanding are set aside, and the case is remanded for further proceedings consistent herewith."
*Halliday v. United States,* 380 F.2d 270, 272–74 (1st Cir.1967), *aff'd on other grounds,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), *reh'g denied,* 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1970) (footnotes omitted) (emphasis added).[3]

Four short years ago this Court, in a per curiam opinion, reversed a summary dismissal of a post-conviction proceeding seeking relief from entry of a plea of guilty to the charge of second degree murder. This Court directed the district court "to hold an evidentiary hearing for the purpose of determining whether the defendant was under the influence of prescribed drugs which prevented the defendant from making a voluntary, knowing, and intelligent guilty plea." *State v. Cobb,* 100 Idaho 116, 594 P.2d 154 (1979). Today, the Court declares that DeFord is not entitled to such an evidentiary hearing to determine the extent to which he was under the influence of the deputy's information. The administration of criminal justice in Idaho has again miscarried. I respectfully dissent.

**3.** This case was relied upon and cited in *State v. Bearshield,* 104 Idaho 676, 662 P.2d 548 (1983), an opinion from which Justice Bakes dissented in an opinion which Justice Shepard joined.