934 P.2d 931

STATE of Idaho, Plaintiff–Respondent,

v.

Marcus W. MATHEWS, Defendant–
Appellant.

Marcus W. MATHEWS,
Plaintiff–Appellant,

v.

STATE of Idaho, Respondent.

Nos. 20154, 21127.

Supreme Court of Idaho,
Moscow, April 1995 Term.

March 20, 1997.

Idaho Legal Aid Services, Inc., E. Maureen Laflin, Supervising Attorney and Megan M. Grant and Sheryl Musgrove, legal interns, argued, Moscow, for appellant.

Douglas Nash, Chief Counsel, Nez Perce Tribal Committee, for Amicus Curiae Nez Perce Tribe.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, argued, Boise, for respondent.

ON REHEARING

McDEVITT, Justice.

Appellant Marcus Mathews (Mathews), arrested and charged with first degree murder under I.C. §§ 18–4001, 18–4002, and 18–4003 for the death of his estranged wife, Holly Morris, in Lewiston, Idaho, appeals an order of the district court denying his motion to suppress evidence obtained in a search of his property on the Nez Perce Indian Reservation. Mathews asserts that the search warrant was invalid because it was obtained and executed without prior tribal court approval. Specifically, Mathews argues that the state's jurisdiction to order a search of Indian property in Indian country is precluded by the exclusive and plenary jurisdiction of the federal government over Indian affairs, by federal preemptive legislation, and by tribal sovereignty. This case, *State v. Mathews*, Docket No. 20154, is on rehearing.

Mathews also appeals an order of the district court denying his motion for postconviction relief. That case is *Mathews v. State*, Docket No. 21127. Mathews urges this Court to overturn the decision of the trial court that an unsigned warrant is not facially deficient. We first discuss *Mathews v. State*, Docket No. 21127.

## I.

## FACTS PERTAINING TO BOTH APPEALS

On January 16, 1992, Mathews was arrested and charged with the murder of his estranged wife, Holly Morris (Morris), who was found dead in her home in Lewiston, Idaho. Mathews is an enrolled member of the Nez Perce Indian Tribe, and was living on the reservation at the time of Morris's death. A few days prior to Mathews's arrest, Officer Greene of the Lewiston Police Department prepared two affidavits in support of requests for search warrants for Mathews's home on the reservation and the home of Mathews's sister and brother-in-law, Donna and Bill Henry, also on the reservation. Officer Greene informed Officer Ed Rolfe of the Lapwai office of the Bureau of Indian Affairs (BIA) of the warrants. Rolfe contacted Judge Miles of the Nez Perce Tribal

Court and informed her that the warrants were being prepared. Judge Miles told Rolfe she would meet the officers at her office prior to the search to review the warrants pursuant to the Nez Perce Tribal Law and Order Code.

On January 13, 1992, Officer Greene took the affidavits for the search warrants to Nez Perce County Magistrates Perry and Elliott. Judge Perry signed the documents regarding the warrant for the Mathews's home and Judge Elliott was given all the documents relating to the search warrant for the Henry residence. Judge Elliott notarized the officer's oath on the Affidavit for Search Warrant and signed all other documents regarding the warrant except the detention order and the search warrant. The warrant and detention order were signed the following day, on January 14, 1992, after they had been executed.

The Lewiston Police Department, accompanied by Deputy Don Taylor of the Nez Perce County Sheriff's Office and a BIA officer, executed the search warrants at the Henry home on the Nez Perce Reservation without obtaining the prior approval of Judge Miles. The Lewiston police did confer with the BIA, with tribal prosecutor Elliot Moffett, and with the Idaho Attorney General and the United States Attorney's office before executing the warrants. As a result of the searches, the Lewiston officers recovered, on execution of the unsigned warrant, the murder weapon and a pair of tennis shoes that matched tracks found at the scene of the crime. Mathews was then arrested and charged with the first degree murder of Morris.

Mathews moved to suppress the evidence obtained from the Henry home on the grounds that the state authorities lacked jurisdiction to execute a warrant in Indian Country. This motion was denied and Mathews entered an Idaho Criminal Rule 11 plea of guilty preserving this issue for appeal.

## II.

## PROCEDURAL BACKGROUND IN *MATHEWS V. STATE*, DOCKET NO. 21127

Concurrent with his appeal from his Judgment of Conviction, Mathews filed a petition

for post-conviction relief. The petition asked the district court to vacate Mathews's sentence due to the involuntariness of his plea. The issues raised included the ineffective assistance of counsel and prosecutorial, police and judicial misconduct. Each of the issues raised centered on legal and factual questions based upon the execution of an unsigned search warrant. Thereafter, the state filed a motion for summary disposition and Mathews filed an answer and cross-motion. Oral arguments were heard and the district court issued its opinion denying post-conviction relief. Mathews also appealed this order.

On appeal this Court was unable to determine from the record whether or not Ms. Henry, the occupant of the home searched, questioned the validity of the warrant, (i.e. its lacking a signature), before the search was conducted and if Judge Elliott was aware he had not signed the search warrant. This Court on September 3, 1996, remanded this case to the trial court for a determination of these two issues.

On remand, the trial court held an evidentiary hearing and issued Findings on Remand. The trial court found in part:

This Court FINDS that Ms. Henry questioned the validity of the search warrant prior to the time of the search.

The testimony of Corporal Thomas H. Greene, Jr. and Ms. Donna Henry conflict on this issue; however, even assuming that the appellant (Mathews) has the burden of proof, the evidence establishes a preponderance that shortly after the law enforcement officers entered the Henry residence on January 13, 1992, and before any search of that residence, Ms. Henry was shown a copy of the search warrant which contained no Judge's signature. At that time, Ms. Henry questioned the validity of the search warrant by pointing out that the copy was not signed nor dated.

. . .

Corporal Greene testified that he deceived Ms. Henry by showing her his affidavit for the search warrant with Judge Elliott's signature when she asked why there was no signature on the warrant. Corporal Green intended for Ms. Henry to believe that the affidavit with Judge Elliott's signature was in fact the warrant.

. . .

This Court FINDS that at the time Corporal Greene and the other officers left his chambers on January 13, 1992, Judge Elliott had found that there was probable cause to search the Henry residence; Judge Elliott intended to sign the search warrant for the Henry residence; Judge Elliott believed he had signed the search warrant for the search of the Henry residence; and Judge Elliott thought the officers would execute the search warrant after they left his office. . . . The only reasonable conclusion to be drawn is that Judge Elliott simply made a mistake, i.e., he thought he had signed the search warrant for the search of the Henry residence at the time the officers left his chambers on January 13, 1992, but he had not.

### III.

### ISSUES ON APPEAL IN *MATHEWS V. STATE*, DOCKET NO. 21127

The first issue is whether Mathews's plea was involuntary because he was deprived of his right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, § 13 of the Idaho Constitution in that a reasonably competent defense counsel would have discovered, investigated and moved to suppress the evidence illegally obtained and the failure of Mathews's counsel to do so was deficient and prejudiced Mathews because there is a reasonable probability that, but for counsel's error, Mathews neither would have pled to, nor would have been found guilty of, first degree murder.

The second issue is whether the action of the state through the prosecutor, police and judge violated Mathews's constitutional right to due process and a fair trial, as mandated by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, §§ 13, 17 and 18 of the Idaho Constitution.

Finally, the third issue is whether the district court erred in summarily dismissing Mathews's petition for post-conviction relief and granting the state's motion for summary disposition, without conducting an evidentiary hearing.

The resolution of the above-stated issues is dependent upon whether the district court erred in summarily disposing of Mathews's post-conviction application, given the search warrant was not signed by a magistrate or district judge.

## IV.

### ANALYSIS IN *MATHEWS V. STATE,* DOCKET NO. 21127

#### A. STANDARD OF REVIEW

■ A summary disposition under I.C. § 19–4906(b) is the procedural equivalent to a summary judgment motion under I.R.C.P. 56. *Matthews v. State,* 122 Idaho 801, 807, 839 P.2d 1215, 1221 (1992). A post-conviction application may be dismissed summarily where its allegations, even if true, would not entitle the applicant to relief. *Id.* Summary dismissal may be appropriate, even if the applicant's alleged facts are uncontroverted by the state, because while underlying facts must be regarded as true, the applicant's conclusions need not be so accepted. *Phillips v. State,* 108 Idaho 405, 407, 700 P.2d 27, 29 (1985). Bald and unsupported allegations recited by a petitioner are insufficient to entitle him to an evidentiary hearing. *Pulver v. State,* 93 Idaho 687, 692, 471 P.2d 74, 79 (1970), *overruled on other grounds by State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). A summary dismissal based on the pleadings does not require a hearing; neither does a summary dismissal require the district court to file findings of fact and conclusions of law. *Deford v. State,* 105 Idaho 865, 867, 673 P.2d 1059, 1061 (1983).

### B. THE SEARCH WARRANT WAS INVALID

■ We address first the question of the sufficiency of an unsigned warrant as this underlies all issues raised in the post-conviction appeal.

It is factually undisputed that the search warrant for the Henry home, where the murder weapon and shoes were discovered,[1] was not signed by a magistrate when the search took place on January 13, 1992. On January 13, 1992, Officer Greene took the proposed warrant, affidavit and acknowledgement of oath from the deputy prosecuting attorney to the district court where Magistrate Elliott reviewed the documents pertaining to the Henry home. He examined the request for a search warrant and witnessed the signature by Officer Greene on the affidavit. Judge Elliott then signed the acknowledgment on the affidavit and the acknowledgment of oath. In Judge Elliott's affidavit filed in the course of this post-conviction relief proceeding, he stated he found that probable cause existed to believe that the evidence mentioned in the affidavit could be found at the Henry home and that he fully intended to sign the warrant. He then swears:

Apparently I forgot. Nevertheless, I fully intended to issue the search warrant to the B & D Henry residence as a valid search warrant. The fact that I neglected to sign the search warrant should in no way be taken to mean that I did not think probable cause existed or that I intended to in any way hinder the execution of the search warrant I was issuing.

Thus, the critical question before this Court is as follows: Do the Constitution of the State of Idaho, the statutes governing the issuance of search warrants, and the Idaho Criminal Rules require a magistrate or dis-

---

1. The tennis shoes were not on the return filed on the Henry house warrant, but the state in response to Interrogatory 19 of the Defendant stated:

    At the time that the execution of the search warrant at 153 Joseph Street commenced, Marcus Mathews was not at the residence. Mrs. Henry was present at the time the items listed on the return of the warrant dated January 14, 1992 were seized. A list of those items was prepared prior to Tom Greene departing for execution of the second warrant on Agency Road. Alan Johnson remained behind at the Joseph Street address and was present there when Marcus Mathews returned and at that time seized Mathews' tennis shoes. The fact that the tennis shoes were not added to the list previously prepared was an oversight.

trict judge's signature in order for a search warrant to be validly issued.

This is a case of first impression in the State of Idaho. Both parties have cited authority from other jurisdictions supporting their respective positions.

This Court from its earliest interpretation of Article I, § 17 of the Idaho Constitution, has held that the right afforded individuals to protection of their persons and homes is so fundamental as to require strict adherence to the constitutional and statutory requirements.

Art. 1, sec. 17 of the constitution, provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

The right protected by the above provision of our constitution has been deemed of so great importance that a similar provision is found in the constitution of the United States and in the constitution of nearly every state in the Union. Under such constitutional provisions, it is uniformly held that the search-warrant must conform strictly to the constitutional and statutory provisions providing for its issuance.

*Purkey v. Maby*, 33 Idaho 281, 283, 193 P. 79, 79 (1920).

Idaho Code §§ 19–4401, –4406, and –4407 were adopted in 1864. This is the first case where this Court is urged to approve a warrant that was not signed by a magistrate or district judge.

Idaho Code § 19–4401 provides as follows:

**Search warrant defined.**—A search warrant is an order in writing, in the name of the state of Idaho, signed by a magistrate, judge or justice directed to an officer or officers named therein, or other officer authorized by law to execute search warrants directing the officer to search for and seize property or intangibles.

Idaho Code § 19–4406 requires the signature of the judge also:

**Issuance of warrant.**—If the magistrate is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a peace officer in his county, commanding him forthwith to search the person or place named, for the property specified, and to bring it before the magistrate.

Idaho Code § 19–4407 provides a form of warrant which clearly contemplates being signed by a magistrate or district judge.

The state urges that the rules of this Court should prevail over the clear statutory authority contained in Idaho Code §§ 19–4401 and 19–4406 requiring the signature of the court.

Idaho Criminal Rule 41 provides that "[a] search warrant authorized by this rule may be issued by a district judge or magistrate...." Idaho Criminal Rule 41 is not in conflict with the statute or the constitution.

Idaho Code §§ 19–4401, 19–4406, and 19–4407 predate the Constitution of the State of Idaho. These code sections create a substantive right in a citizen to refuse to permit a search pursuant to an unsigned warrant. This substantive right existed prior to the adoption of this State's Constitution. This substantive right was affirmed by Article XXI, Section 2 of the Idaho Constitution which provides:

**Laws continued in force.**—All laws now in force in the territory of Idaho which are not repugnant to this Constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature.

Article I, Section 17 of the Idaho Constitution further establishes the substantive rights of citizens to require a valid warrant for officers to search their home. The requirement of a signed warrant enables a citizen to know that the search by the officer has in fact been authorized by a magistrate or district judge and is not being conducted at the whim or caprice of the officer.

█ In this case, Ms. Henry exercised her right to question the validity of the warrant. The police officers gained admittance

through deception. Once the lack of a signature is discovered or raised, the search must stop until such time as the lack of a signature may be corrected by the signature of the magistrate. Failure to supply the signature once it is challenged will vitiate any further search under the warrant. "Evidence" obtained in such an unauthorized search is not admissible.

## V.

### REMAINING ISSUES RAISED ON POST–TRIAL HEARING APPEAL AND APPEAL FROM JUDGMENT OF CONVICTION

Having found the warrant deficient, we need not address the balance of the issues raised on appeal as they are rendered moot.

## VI.

### CONCLUSION

The district court erred in summarily disposing of Mathews's post-conviction application. We vacate and remand to the district court for further proceedings consistent with this opinion.

Justice JOHNSON, and Justice Pro Tem JUDD, concur.

Justice SCHROEDER, dissenting.

This case involves an innocent mistake in the judicial process that caused no harm and an error in judgment by a police officer that caused no harm. The Court has engrafted a condition onto the Idaho Constitution that the framers did not include. The decision runs contrary to substantial authority, departs from a policy expressed in this Court's own rules and jeopardizes an entire class of warrants that have been authorized by the legislature and recognized as an integral part of the judicial process. The decision imposes the court-created sanction of suppression of truthful evidence, ignoring the roots and justification for that extraordinary remedy. The decision will protect no one from future judicial misconduct, because the magistrate's error was an oversight as likely to occur after this decision as before. Nobody intends an oversight. They happen regardless of saying they should not. The police officer committed an error in judgment by proceeding without a signed warrant, but the error was correctable under this Court's rules and was made by the officer with the knowledge that the judge had in fact determined there was probable cause for issuance of a search warrant. An intentional killing falls outside the bounds of any civilized society. An unintentional oversight is part of the human condition suffered by even the most diligent. An error in judgment based upon a correct understanding of the intentions of the judge is also within the bounds of forgivable conduct. The decision in this case misses the balance.

## I.

### THE SEARCH WARRANT WAS NOT CONSTITUTIONALLY INFIRM, AND THE STATUTORY DEFICIENCY WAS HARMLESS AND COULD BE CORRECTED.

Article I, Section 17 of the Idaho Constitution does not set forth the requirement of a judge's signature for issuance of a search warrant. Article I, Section 17 requires a showing of probable cause by affidavit particularly describing the place to be searched and the person or thing to be seized. The requirement of a judge's signature is statutory.

The policy of this Court concerning the corrections of oversights of a clerical nature is set forth in its own rules:

Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

Idaho Criminal Rule 36.

This is a policy of law that permits the correction of oversights and omissions when no one is harmed. Analysis of the facts and law indicates that this policy should be applied in this case.

The statutes which address search warrants are clear. Idaho Code defines a search

warrant as, "an order in writing, in the name of the state of Idaho, signed by a magistrate, judge or justice directed to an officer or officers named therein, or other officer authorized by law to execute search warrants directing the officer to search for and seize property or intangibles." I.C. § 19–4401 (1987). To issue a warrant a judge must sign the warrant based upon a finding of probable cause. I.C. § 19–4406 (1987). In addition, section 19–4407 provides a form for a warrant which provides a space for a judge's signature. The lack of a signature in this case is undeniably a deficiency, but not one that should result in suppression.

Despite the statutory definition of a search warrant, the 1994 Legislature enacted statutes permitting the issuance of telephonic warrants. I.C. §§ 19–4404, 4406 (Supp. 1995). Such a legislative pronouncement indicates that a judge's signature is not the critical element of a search warrant. The critical element is a determination of probable cause. Section 19–4406 of the Idaho Code now permits a judge to verbally authorize a peace officer to sign his or her name to a warrant, which the judge will sign at a time subsequent to the search. Under the present statutory scheme the deficiency that occurred in this case could be cured by a telephone call from the police officer to the issuing judge who would authorize the officer to sign the judge's name to the warrant. The judge would subsequently sign the warrant and there would be no statutory deficiency. This is a clear indication of state policy that the showing of probable cause is the essential element of protection from an unreasonable search and seizure, not the judge's signature on the warrant. The judge's signature on the warrant is a technical requirement that confirms the showing of probable cause. In this case the judge's signature on the affidavit showing probable cause for the search and the judge's statement under oath confirm the showing of probable cause. The lack of a signature was an oversight. Suppressing evidence on the basis that the warrant was inadvertently unsigned despite a finding of probable cause, does not vindicate a fundamental state policy. The Court's determination that the lack of a signature is a constitutional violation, rather than simply a statutory defect casts doubt on the validity of the telephonic warrants since they are not signed by the judge when the search is conducted. The judge subsequently confirms issuance of the warrant, which is exactly what happened in this case.

The Court's opinion indicates that "[t]he requirement of a signed warrant enables a citizen to know that the search by the officer has in fact been authorized by a magistrate and is not being conducted at the whim or caprice of the officer." This reasoning for the rule enunciated by the Court does not stand scrutiny, since a search warrant need not even be presented before a search is conducted, *State v. Gomez,* 101 Idaho 802, 809, 623 P.2d 110, 117 (1980), *cert. denied,* 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981), and since mistakes in orders arising from "oversight or omission" may be corrected by the court at any time. I.C.R. 36.

In *Gomez,* this Court found the following statement from the United States Supreme Court to be applicable to search warrants issued pursuant to I.C.R. 41:

> "Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not invariably require that this be done before the search takes place."

*Gomez,* 101 Idaho at 809, 623 P.2d at 117 (quoting *Katz v. United States,* 389 U.S. 347, 355 n. 16, 88 S.Ct. 507, 513 n. 16, 19 L.Ed.2d 576 (1967)). This Court noted that other courts have concluded that the fact that investigative officers initiated a search without the issued but undelivered warrant in their physical possession did not invalidate the warrant. *Gomez,* 101 Idaho at 809, 623 P.2d at 117 (citing *United States v. Woodring,* 444 F.2d 749 (9th Cir.1971); *United States v. Cooper,* 421 F.Supp. 804 (W.D.Tenn.1976); *State v. Johnson,* 16 Ohio Misc. 278, 240 N.E.2d 574 (Ct.C.P. 1968)). Since presentation of an issued warrant is not crucial to the validity of a search, the presentation of a warrant which was based on probable cause but lacked a judge's signature cannot be the basis for invalidating a warrant to protect the citizen. Nothing mandates that a citizen re-

ceive notice of judicial review of probable cause prior to a search pursuant to a search warrant.

Other facially defective warrants have been upheld by this Court. *State v. Schaffer,* 112 Idaho 1024, 1028, 739 P.2d 323, 327 (1987) (The search warrant contained a sufficient description of the property to be searched, even though there was no mailbox and the county road was inaccurate, because the officers could find and did find the residence from the description.); *Gomez,* 101 Idaho at 810, 623 P.2d at 118 (A non-existent house number did not invalidate a warrant which indicated that the house was "identified with the number 204 posted on the front of the house..."); *State v. Carlson,* 101 Idaho 598, 618 P.2d 776 (1980) (In light of other descriptions contained in the affidavit and the fact that an incorrectly named road was generally referred to as referred to in the affidavit, affidavit in support of application for search warrant was sufficient even though named street was incorrect.); *State v. Lindner,* 100 Idaho 37, 41, 592 P.2d 852, 856 (1979) (discrepancy in affidavit for search warrant found to be "an oversight and not intentional" and not a basis for invalidating search warrant). "Search warrants are not deeds or tax notices. They are not subject to technical drafting requirements. They should be interpreted in 'a commonsense and realistic fashion.'" *State v. Holman,* 109 Idaho 382, 388, 707 P.2d 493, 499 (Ct.App. 1985) (quoting *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

Numerous other courts have held that a judge's omission of a signature on a search warrant is not necessarily fatal. The Supreme Court of Arizona upheld a search warrant served without a magistrate's signature, even though an Arizona statute defined a search warrant as including a magistrate's signature. *Yuma County Attorney v. McGuire,* 109 Ariz. 471, 512 P.2d 14 (1973). The court found the judge's failure to sign the warrant an accident or oversight and stated:

> The key element in the issuance of a search warrant is the consideration by a neutral and detached magistrate. The

Arizona Legislature recognized this fact when it authorized the use of telephonic search warrants where the warrant is signed by the police officer signing the warrant in the name of the issuing magistrate. [The judge] signed the affidavit in support of the search warrant and intended by his actions to give legal effect to the issuance of the warrant. Judicial consideration was given to the question of the existence of probable cause, probable cause for the issuance of the warrant was found, and the affidavit was signed by the judge. We hold that the inadvertent failure to sign the warrant did not invalidate the warrant.

*Yuma County,* 512 P.2d at 15–16 (citation omitted). The facts in *Yuma County* are virtually identical to those in this case.

In other states with a statutory definition of search warrant which includes a judge's signature, such as I.C. § 19–4401, search warrants missing the signature have likewise been upheld. *People v. Superior Court for Los Angeles County,* 75 Cal.App.3d 76, 141 Cal.Rptr. 917 (2 Dist.1977). In *Commonwealth v. Pellegrini,* 405 Mass. 86, 539 N.E.2d 514, *cert. denied,* 493 U.S. 975, 110 S.Ct. 497, 107 L.Ed.2d 501 (1989), the court held that, "where, as here, there is no dispute that the judge intended to issue the warrant, and the judge intended to issue the warrant, and the judge signed the officer's affidavit, the failure to sign the warrant 'is no more than a clerical error.'" 539 N.E.2d at 516 (quoting *Commonwealth v. Truax,* 397 Mass. 174, 490 N.E.2d 425 (1986)).

The Superior Court of Connecticut has held that the omission of a judge's signature on a copy of a search warrant served upon a defendant was harmless error. *State v. Montagna,* 35 Conn.Supp. 225, 405 A.2d 93 (1979). The *Montagna* court termed the omission "an administrative or clerical error" and stated that, "[a]bsent a substantial showing of prejudice, the omission of the signatures on the copy was minor and does not invalidate an otherwise lawful search." 405 A.2d at 95. "The defendant's fourth amendment rights were protected, in that an impartial judicial officer ruled at the outset on the existence of probable cause in the supporting

affidavits." *Id.; See State v. Spaulding,* 239 Kan. 439, 720 P.2d 1047, 1049 (1986) (The judge's "failure to sign the warrant was a mere oversight, a technical irregularity.").

In *People v. Blake,* 266 Ill.App.3d 232, 203 Ill.Dec. 658, 640 N.E.2d 317 (1994), an executed search warrant did not contain the time, date and issuing judge's signature. Nonetheless, the court upheld the validity of the warrant and stated:

> While we certainly do not mean to disparage the statutory safeguards relating to the conduct of searches, we are not prepared to say that the inadvertent failure to present a facially complete search warrant at the time of the search *necessarily* affects substantial rights so as to invalidate the search, and we cannot find that substantial rights were affected in this case.

203 Ill.Dec. at 663, 640 N.E.2d at 322.

Like the majority's opinion, other courts have held that the failure to sign a warrant invalidates the warrant and renders it a nullity. *State v. Williams,* 57 Ohio St.3d 24, 565 N.E.2d 563, *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991); *Kelley v. State,* 55 Ala.App. 402, 316 So.2d 233, 234 (Crim.1975) (A search warrant is void "when it shows on its face that it lacks the signature of any magistrate, such being the only authorized officer to put life in the paper."); *State v. Surowiecki,* 184 Conn. 95, 440 A.2d 798 (1981); *Byrd v. Commonwealth,* 261 S.W.2d 437, 438 (Ky.1953); *State v. Cochrane,* 84 S.D. 527, 173 N.W.2d 495 (1970). Such a strict interpretation of the requirements of a search warrant ignores the fact that no substantive rights of a person are violated when an unsigned search warrant is presented so long as probable cause to search has been determined to exist by a neutral and detached magistrate. When there is no dispute that the judge intended to issue a warrant, and the judge signed the officer's affidavit, the failure to sign the warrant is simply a clerical error. Had the oversight not occurred, the search would have taken place just as it did. The lack of a signature changed nothing. There is no prejudice to the defendant. The error, although making the warrant facially deficient, does not make the search warrant fatally deficient. The defendant gains an incredible windfall.

## II.

## THE POLICIES BEHIND THE EXCLUSIONARY RULE ARE NOT SUFFICIENTLY ADVANCED BY ITS APPLICATION IN THIS CASE TO WARRANT SUPPRESSION OF THE EVIDENCE.

The United States Supreme Court has declared that deterrence of Fourth Amendment violations is clearly the purpose behind the exclusionary rule. *Withrow v. Williams,* 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). The purpose behind the rule is to deter unreasonable searches, regardless of how probative their fruits. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). "The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect. As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served." *Arizona v. Evans,,* 514 U.S. 1, 11, 115 S.Ct. 1185, 1191, 131 L.Ed.2d 34 (1995) (citation omitted). "Where 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use ... is unwarranted.'" *Id.* (quoting *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976)) (emphasis added).

This Court has acknowledged that the "federal system has clearly repudiated any purpose behind the exclusionary rule other than that of a deterrent to illegal police behavior." *State v. Guzman,* 122 Idaho 981, 993, 842 P.2d 660, 672 (1992). In *Guzman,* this Court went on to announce that in Idaho, the exclusionary rule should be applied in order to:

> 1) provide an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure; 2) deter the police from acting unlawfully in obtaining evidence; 3) encourage thoroughness in the warrant issuing process;

4) avoid having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means; and 5) preserve judicial integrity.

122 Idaho at 993, 842 P.2d at 672.

The policies behind the exclusionary rule are not advanced sufficiently by applying the rule to this case. 1) The judge has sworn by affidavit that probable cause existed in this case and was shown prior to the service of the search warrant, so the search was not unreasonable. 2) To the extent that the police officer concealed the fact that he did not possess a signed warrant and misled Ms. Henry by displaying the signed affidavit, there was police misconduct. However, the egregiousness of this conduct is diminished by the fact that the officer had in fact shown probable cause and knew the judge intended that a search take place based upon that showing of probable cause. 3) The omitted signature was an accidental and inadvertent mistake made by a magistrate judge. Inadvertences will occur despite this decision. Such a mistake does not justify the application of the judicially created, and not statutorily or constitutionally mandated, exclusionary rule. 4) No judge, including the judge in this case, intends to allow an unsigned warrant to leave his or her possession after finding probable cause. It is a mistake, not an abuse of power. Under present procedure the police officer could have cured the problem by a telephone call to the judge. There is little deterrent effect in suppressing the evidence in this case. 5) The draconian result that may flow from this Court's decision is far more serious than the administrative error made by the judge in this case and the error in judgment by the police officer. The citizen's rights were protected by a scrutiny of the facts by the judge and the determination of probable cause. Judicial integrity is not preserved by the majority's opinion; rather it is diminished because the result in this case cannot be justified to fairminded people. Form has dominated substance.

If there is concern that judges will carelessly allow unsigned search warrants out of their hands following a determination of probable cause, there is a procedural mecha-

nism to address such concerns. The Idaho Judicial Council has disciplinary authority over all judges in the state. If a judge were to persistently make mistakes arising from carelessness or ignorance of the law, remediation could take place through Judicial Council action. There is no indication in this case of anything other than a one-time procedural mistake, but if the occasion should arise, corrective action is available without suppressing the truth. So far as the officer's conduct is concerned, he misrepresented a fact to Ms. Henry, but that apparently is not the critical element in the Court's decision. Having determined that the search warrant was invalid, the officer's state of mind is irrelevant. Even if the officer's conduct were relevant under the Court's rationale, the remedy significantly outweighs the wrong.

## III.

## THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE APPLIES.

This Court should re-think its rejection of the good faith exception to the exclusionary rule. However, even this Court's cases purporting to reject the good faith exception allow the good faith exception to operate in this situation.

This Court's rejection of the good faith exception to the exclusionary rule has been specifically limited to those cases in which a warrant's fatal flaw was the lack of probable cause—the touchstone for determining the reasonableness of a search or seizure. *State v. Guzman*, 122 Idaho at 993, 842 P.2d at 672 (Regardless whether the goal of police deterrence would be served, the state's exclusionary rule should be applied in every case where evidence is seized pursuant to a warrant which is *not supported by probable cause*.) (emphasis supplied); *State v. Josephson*, 123 Idaho 790, 795, 852 P.2d 1387, 1392 (1993) (rejection of good faith exception to the exclusionary rule applied retroactively to case pending at the time *Guzman* was decided *where probable cause lacking*). (emphasis added). But that is not the case presented here. It is undisputed that a good and suffi-

cient showing of probable cause was made for issuance of the warrant.

As previously discussed, this Court outlined the purpose of Idaho's exclusionary rule in *Guzman*. 122 Idaho at 993, 842 P.2d at 672. Application of the rule on these facts would not further any of the rule's stated purposes. Corporal Greene, who was present when the underlying facts were reviewed by the judge, and whose affidavit establishing the requisite probable cause was signed by the judge, was also present when the warrant was issued. Because the existence of probable cause was based on Corporal Greene's personal knowledge, and because he personally witnessed the issuance of the warrant, there was no reason for him to doubt the warrant's constitutional validity. Officer Greene may not have acted in good faith in showing Ms. Henry the affidavit which accompanied the search warrant; however, he had no reason to question the validity of the warrant based on his personal observations in court. Moreover, while the goal of encouraging thoroughness in the warrant issuing process is unquestionably a worthy one, it should not be achieved at the expense of equally important goals: preservation of the integrity of the judicial process and respect for law. Application of the exclusionary rule on these facts will denigrate both.

I respectfully dissent from the Court's opinion.

Justice SILAK, dissenting from Part IVB and Part VI of the Court's opinion:

I respectfully dissent. The Court's opinion holds that the lack of signature invalidates the search warrant, and that therefore the evidence obtained, the murder weapon and incriminating shoes, should have been suppressed. I disagree, for three reasons: (1) the Idaho Constitution does not by its language require in each and every case that to be valid a search warrant must be signed by a judge; (2) the criminal rules of this Court do not require that a search warrant be "signed" but only "issued" by a judge, and these rules take precedence over conflicting statutory provisions; and (3) even if the search warrant is deemed unconstitutional in this case, the exclusionary rule should not be employed to remedy the inadvertent mistake of a judge and the misrepresentation of a police officer to the citizen whose premises were the subject of the search.

Art. 1, § 17 of the Idaho Constitution states that "no warrant shall issue without probable cause shown by affidavit. . . ." This constitutional provision does not, by its express terms, include the requirement of signature, but only issuance. The constitution's language is particularly significant because this provision was adopted in 1890, some 26 years after the enactment of I.C. §§ 19–4401, 19–4406, and 19–4407. If the framers of our Constitution had wished to impose a signature requirement, they could simply have employed the same language as that used in the statutes.

I believe that a better analysis, one which comports with the text of our Constitution and that protects individual rights without unnecessarily undermining law enforcement objectives, is one which does not treat an unsigned search warrant as *per se* invalid, but which examines the precise circumstances of the individual case to determine whether the judge had made the essential probable cause determination before issuing the warrant. Such an approach is supported by decisions from numerous other jurisdictions. *See, e.g., United States v. Turner*, 558 F.2d 46, 50 (2d Cir.1977) (as long as magistrate in fact performs substantive tasks of determining probable cause and authorizing issuance of warrant, Fourth Amendment is satisfied); *Yuma County Attorney v. McGuire*, 109 Ariz. 471, 512 P.2d 14, 15–16 (1973) (key element in issuance of warrant is consideration by a neutral and detached magistrate; where judicial consideration was given to question of existence of probable cause, probable cause for issuance of warrant was found, and affidavit was signed by the judge, inadvertent failure to sign the warrant does not invalidate it); *State v. Spaulding*, 239 Kan. 439, 720 P.2d 1047, 1048–49 (1986) (where judge makes finding of probable cause and intentionally issues warrant, failure to sign warrant is mere oversight or technical irregularity); *Commonwealth v. Pellegrini*, 405 Mass. 86, 539 N.E.2d 514, 516 (1989) (failure to sign otherwise valid war-

rant, where there is no question that the judge intended to issue warrant, and the judge signed the officer's probable cause affidavit, is ministerial defect which does not invalidate the warrant); *State v. Andries,* 297 N.W.2d 124, 125 (Minn.1980) (requirement that issuing judge sign warrant is purely ministerial task; warrant is valid so long as issuing judge performs substantive tasks of determining probable cause and ordering its issuance); *People v. Sanchez,* 131 Cal.App.3d 323, 182 Cal.Rptr. 430, 434 (1982) (inadvertent absence of the magistrate's signature on traditional warrant is technical defect which does not invalidate the warrant); *People v. Superior Court for the County of Los Angeles,* 75 Cal.App.3d 76, 141 Cal.Rptr. 917, 919 (1977) (primary purpose of Fourth Amendment is to require that decisions about sufficiency and reliability of evidence used to justify a search be made by a neutral and detached magistrate); *State v. Smith,* 562 N.E.2d 428, 429–30 (Ind.Ct.App.1990) (provided judge found probable cause and intended to issue warrant, omission of signature will not invalidate warrant).

The question whether the absence of a magistrate's signature on a warrant is a mere technical oversight and clerical error, or whether the absence of the signature renders the warrant constitutionally invalid because no probable cause was found, should depend on the facts of the particular case. In this case, the evidence is uncontroverted that the magistrate intended to sign the search warrant. In his affidavit, the magistrate specifically stated under oath that he believed probable cause existed to find evidence of Morris' murder at the Henry residence, but that as an oversight, he simply forgot to sign the warrant. The magistrate's testimony at the hearing after remand likewise confirmed that the magistrate had determined probable cause existed for the search. Under the facts of this particular case, I would hold that the fact that the search warrant was not signed by the magistrate on the date the search was conducted was a clerical or ministerial error that did not invalidate the warrant.

I disagree that the application of I.C. § 19–4401, 19–4406 and 19–4407 would ren-

der this search invalid, for I view these statutes as having been superseded by I.C.R. 41. Rule 41 of the Idaho Criminal Rules does not include a judicial signature requirement for the issuance of a search warrant by a judge, and Idaho statute and case precedent support the proposition that when court rules and statutes conflict in matters of procedure entrusted to the courts, then the statute must give way.

I.C. § 1–212 provides that "[t]he inherent power of the Supreme Court to make rules governing procedure in all the courts of Idaho is hereby recognized and confirmed." This statute dates from 1941, long after the 1864 statutes at issue here. Pursuant to its inherent rule-making authority, this Court adopted the Idaho Criminal Rules, including Rule 41, which became effective July 1, 1980. Rule 41 specifically addresses the issuance of search warrants by a district judge or a magistrate. Although Rule 41(c) contains a detailed description of the circumstances under which a judge or magistrate may "issue" a warrant, and an extensive description of the contents of a warrant, nothing in Rule 41 requires that the warrant issue only upon the signature of a judge or magistrate. Given the detailed nature of the rule, and the fact that the 1864 statutes had long been in existence at the time of the Rule's adoption, I believe that the omission of any specific signature requirement means that a warrant is valid under the Rules of this Court even without the signature of a judge or magistrate, so long as the other requirements for issuance of a search warrant are met, as they are in this case.

In an earlier case in which a statutory provision was deemed to conflict with Rule 41(c), *State v. Yoder,* 96 Idaho 651, 534 P.2d 771 (1975), this Court stated that because the rule was in full force and effect at all relevant times, the statute in question, I.C. § 19–4404, which required examination of the complainant and any witnesses by the magistrate before issuance of a search warrant, was of no further force and effect. *Id.* at 654, 534 P.2d at 774. *See also, State v. Maxey,* 125 Idaho 505, 508, 873 P.2d 150, 153 (1994); *State v. Harbaugh,* 123 Idaho 835, 837 n. 3, 853 P.2d 580, 582 n. 3 (1993); *State v. Cur-*

*rington,* 108 Idaho 539, 540–41, 700 P.2d 942, 943–44 (1985). The Court's analysis here should be guided by these earlier cases. The statutory requirement of a signature is procedural and not substantive, and therefore the Court's own Rule should take precedence over a conflicting statute.

The Court's opinion here states that Idaho Code §§ 19–4401, 19–4406, and 19–4407 "create a substantive right in a citizen *to refuse to permit* a search pursuant to an unsigned warrant." (italics added). I believe this statement is dicta because all the Court is called upon to decide is whether the lack of a magistrate's signature invalidates a search warrant. The issue whether a citizen could lawfully resist police efforts to execute a search pursuant to an unsigned warrant, although one supported by a probable cause finding, is not before the Court. The Court's statement could be construed to encourage confrontations between citizens and the police when searches are being initiated. Legal avenues are available to citizens to challenge an allegedly invalid warrant: a suppression motion, a post-conviction relief proceeding, or a civil action for damages under 42 U.S.C. § 1983 or the Idaho Tort Claims Act. In such court proceedings a full factual record can be developed regarding whether the issuance of the warrant was supported by probable cause. Exactly such proceedings occurred here in the context of the post-conviction relief proceeding, in which the magistrate testified under oath that he had determined the facts supported a finding of probable cause for the issuance of the search warrant here.

My dissent is also based upon what I perceive as an unnecessary application of the exclusionary rule. For the reasons stated by Justice Schroeder in Part II of his dissent, *infra,* I would hold that the exclusionary rule should not be applied in this case.

For all the foregoing reasons, I would affirm the district court's decision that the lack of signature did not invalidate the search warrant.