## PABLO v. THE PEOPLE.

JURISDICTION—INDIANS.

The state courts have jurisdiction to punish Ute Indians for crime committed off their reservation, notwithstanding the particular offense may have been against a member of the same tribe.

*Error to the District Court of Montezuma County.*

Mr. S. W. CARPENTER, for plaintiff in error.

THE ATTORNEY GENERAL, Mr. CALVIN E. REED and Mr. GEORGE F. THORNE, of counsel, for the People.

MR. JUSTICE GODDARD delivered the opinion of the court.

Pablo, an Indian, was convicted of murder of the first degree, in the district court of Montezuma county, and sentenced to suffer the death penalty for killing one Eweep, also an Indian. The record discloses that Pablo and Eweep were both members of a tribe of Southern Ute Indians, and resided on their reservation in Colorado. At the time of the killing they were absent from, and the crime was committed off of, the reservation, and within the county of Montezuma. The only error argued and relied on for reversal of this sentence is the want of jurisdiction in the district court to try and punish plaintiff in error for the offense charged.

This contention is predicated upon the ground that the accused, being a member of the same Indian tribe with deceased, is not amenable to our laws, or the jurisdiction of the state courts, but is answerable to the tribe of which they were both members, and punishable only under its tribal laws or customs. Apparent support is found for this claim in the case of *The State v. McKenney*, 18 Nev. 182; but under the existing legislation on the subject by congress, the reasons controlling that decision no longer exist, and the doctrine therein announced is at the present time, we think, inapplicable.

The right of the Indians to self-government in matters appertaining to themselves, so long as they preserved their tribal relations, being then recognized by the laws and treaties of congress, it was therein held that if congress intended to permit the territory to do away with such customs, and declare as to themselves what acts should constitute crime, and prescribe punishment therefor, it would have used words clearly expressing such intention in the organic act. Not having done so, and such jurisdiction not having been conferred by an affirmative act of the legislature or self-acting clause of the constitution, the court concluded that the jurisdiction to punish tribal Indians for offenses against each other was retained by the tribe to which they belonged. But since that decision was announced congress has, by the act of March 3, 1885, expressly done away with the tribal jurisdiction over certain crimes (among them murder) when perpetrated by one Indian against another, and conferred upon the territorial and federal courts the exclusive jurisdiction to try and punish such offenses when committed within a territory, or within the boundaries of a reservation within a state. This act provides two conditions under which Indians may be punished for the same crimes : *First*, by the territorial courts, and under territorial laws, when committed within the limits of a territory, whether on or off a reservation; *second*, by the federal courts and under the laws of the United States, when the offense is committed on an Indian reservation within the limits of a state.

It seems to us evident that by this departure from its former policy, and by subjecting tribal Indians to the jurisdiction of territorial courts and to punishment under territorial laws for crimes committed within a territory, whether on or off a reservation, and in limiting the jurisdiction of the federal courts to the same offenses when committed on a reservation, if within a state, congress has not only taken such jurisdiction from the tribe, but has, by clear intendment, left the Indian, tribal or otherwise, amenable to state jurisdiction for offenses committed outside the reservation. To

hold otherwise would extend a tribal jurisdiction over offenses committed outside the reservation which does not exist within its limits – a conclusion that, in our opinion, cannot for a moment be entertained.    The state of Colorado was admitted into the Union " upon equal footing with the original states, in all respects whatsoever," and is sovereign within its territorial limits.    " *Prima facie*, all persons within the state are subject to its criminal law and within the jurisdiction of its courts ; if any exception exists, it must be shown."    *State v. Fa-Cha-Na-Tah*, 64 N. C. 614.

There is nothing in our enabling act that curtails the jurisdiction of the state over Indians for offenses committed off their reservation; nor is such jurisdiction in any way limited by the act of congress referred to, whatever its effect may be in depriving the state of jurisdiction within the limits of a reservation.   In the case of *United States v. Kagama*, 118 U. S. 375, that act was under consideration.    Justice Miller, speaking for the court, said :

" The statute itself contains no express limitation upon the powers of a state or the jurisdiction of its courts.   If there be any limitation in either of these, it grows out of the implication arising from the fact that congress has defined a crime committed within the state, and made it punishable in the courts of the United States. * * * It will be seen at once that the nature of the offense (murder) is one which in almost all cases of its commission is punishable by the laws of the states, and within the jurisdiction of their courts.    The distinction is claimed to be that the offense under the statute is committed by an Indian, that it is committed on a reservation set apart within the state for residence of the tribe of Indians by the United States, and the fair inference is that the offending Indian shall belong to that or some other tribe. It does not interfere with the process of the state courts within the reservation, nor with the operation of state laws upon white people found there.    Its effect is confined to the acts of an Indian of some tribe, of a criminal character, committed within the limits of a reservation."

We think, therefore, that the Ute Indians are subject to our state laws and amenable to the jurisdiction of our courts for offenses committed outside the limits of their reservation. This is the only question presented by this record, and all we determine. A very different question would be presented if the state courts should assert jurisdiction over an offense committed by an Indian within the limits of the reservation. Our conclusion, we think, is correct on principle, and supported by the weight of authority. *State v. Williams,* 13 Wash. 335; *Hunt v. State,* 4 Kansas, 60; *United States v. Yellow Sun,* 1 Dill. (U. S. C. C.) 271; *Ward v. Race Horse,* 163 U. S. 504; *In re Wolf,* 27 Fed. Rep. 606.

The sentence and judgment of the district court will therefore be affirmed, and an order will be entered of record appointing and designating the calendar week commencing October 25th as the week for carrying the judgment of the district court into effect, as the statute provides.

*Affirmed.*