986 P.2d 323

STATE of Idaho, Plaintiff–Respondent,

v.

Marcus MATHEWS, Defendant–
Appellant,

Marcus W. Mathews, Petitioner–
Appellant,

v.

State of Idaho, Respondent.

Nos. 24604, 24605.

Supreme Court of Idaho.
Moscow, September 1998 Term.

June 15, 1999.

Rehearing Denied Sept. 8, 1999.

Clark & Feeney, Boise; Idaho Legal Aid Clinic, Maureen E. Laflin, Supervising Attorney, Moscow, for appellant. V. Lane Jacobson and G. Scott Gatewood, Legal Interns argued.

Hon. Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson argued.

SILAK, Justice.

This is an appeal from a district court order denying Marcus Mathews's petition for post-conviction relief. We also review the district court's denial of Mathews's motion to suppress evidence obtained from a search conducted within the exterior boundaries of the Nez Perce Indian Reservation.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On January 16, 1992, Marcus Mathews (Mathews) was arrested and charged with the murder of his estranged wife, Holly Morris (Morris), who was found dead in her home in Lewiston, Idaho. Mathews is an enrolled member of the Nez Perce Indian Tribe, and was living within the Nez Perce Indian Reservation at the time of Morris's death. A few days prior to Mathews's arrest, Corporal Thomas H. Greene (Greene) of the Lewiston Police Department prepared two affidavits in application for search warrants for Mathews's home on the reservation and the home of Mathews's sister and brother-in-law, Donna and Bill Henry (the Henrys), also on the reservation. Officer Greene informed Officer Ed Rolfe (Rolfe) of the Lapwai office of the Bureau of Indian Affairs (BIA) of the warrants. Officer Rolfe contacted Judge Miles of the Nez Perce Tribal Court and informed her that the warrants were being prepared. Judge Miles told Officer Rolfe she would

meet the officers at her office prior to the search to review the warrants pursuant to the Nez Perce Tribal Law and Order Code.

On January 13, 1992, Officer Greene took the affidavits for the search warrants to Nez Perce County Magistrates Perry and Elliott. Judge Perry signed the documents relating to the warrant for Mathews's home and Judge Elliott was given all the documents relating to the search warrant for the Henry residence. Judge Elliott notarized the officer's oath on the Affidavit for Search Warrant and signed all other documents regarding the warrant except the detention order and the search warrant. The warrant and detention order were signed the following day, January 14, 1992, after they had been executed.

The officers from the Lewiston Police Department, accompanied by Deputy Don Taylor of the Nez Perce County Sheriff's Office and a BIA officer, executed the search warrants at the Henry residence on the Nez Perce Indian Reservation without first having them reviewed by Judge Miles. The Lewiston police did confer with the BIA, with tribal prosecutor Elliot Moffett, and with the offices of the Idaho Attorney General and the United States Attorney before executing the warrants. As a result of the searches, the officers recovered the murder weapon and a pair of tennis shoes that matched tracks found at the scene of the crime. Mathews was arrested and charged with first-degree murder.

Mathews moved to suppress the evidence obtained from the Henry residence on the ground that the state authorities lacked jurisdiction to execute a state warrant in Indian country. The motion to suppress did not claim that the lack of a signature on the warrant at the time of its execution was an additional ground supporting suppression. The motion was denied, and on May 29, 1992, pursuant to I.C.R. 11, Mathews entered a conditional plea of guilty preserving the denial of the motion to suppress for appeal. Judgment of Conviction was entered, and Mathews was thereafter sentenced to life imprisonment, with a fixed term of thirty years.

On August 25, 1992, Mathews appealed his conviction claiming that the district court erred in denying his motion to suppress. In a July 1994 opinion, this Court initially held that a state court lacks jurisdiction to issue a search warrant within Indian country. *See State v. Mathews*, No. 20154 (Idaho filed July 18, 1994) (*Mathews I* ). However, the Court later granted the State's petition for rehearing of that appeal.

Concurrent with his appeal from his Judgment of Conviction, Mathews filed a petition for post-conviction relief. The petition asked the district court to vacate Mathews's sentence due to the involuntariness of his plea. In addition to arguments of prosecutorial, police, and judicial misconduct, Mathews argued in the petition that his counsel was ineffective because he had failed to discover that the search warrant executed at the Henry residence was not signed by a magistrate prior to its execution. In response, the State filed a motion for summary disposition of the petition and, Mathews filed an answer and cross-motion for summary disposition. Following oral argument, the district court granted the State's motion for summary disposition. Mathews also appealed this order.

On appeal from the district court's grant of summary disposition of Mathews's post-conviction petition, this Court was unable to determine from the record whether Ms. Henry, the occupant of the home searched, questioned the validity of the warrant before the search was conducted and if Judge Elliott was aware he had not signed the search warrant. On September 3, 1996, this Court remanded this case to the trial court for a determination of these two issues. On remand, the trial court held an evidentiary hearing and issued findings of fact. The trial court found, in part, that Ms. Henry questioned the validity of the search warrant at the time of its execution by pointing out that the copy was not signed or dated. Officer Greene testified that when Ms. Henry asked about the lack of a signature he intentionally deceived her by representing that the search warrant affidavit, which was signed by the magistrate, was the search warrant. The district court also determined that Judge Elliott was unaware that he had failed to sign the warrant.

Mathews's appeal from the grant of summary disposition of his petition for post-con-

viction relief was consolidated with the rehearing of *Mathews I*, No. 20154, and, in a March 1997 opinion withdrawing its July 1994 opinion in *Mathews I*, this Court held:

> Once the lack of a signature is discovered or raised, the search must stop until such time as the lack of a signature may be corrected by the signature of the magistrate. Failure to supply the signature once it is challenged will vitiate any further search under the warrant. "Evidence" obtained in such an unauthorized search is not admissible.
>
> . . . .
>
> Having found the warrant deficient, we need not address the balance of the issues raised on appeal as they are rendered moot.

*State v. Mathews*, 129 Idaho 865, 870, 934 P.2d 931, 936 (1997) (*Mathews II*). The Court vacated the district court's summary disposition order and remanded the case to the district court for further proceedings.

On remand, the district court issued an order denying Mathews's petition for post-conviction relief concluding that Mathews had failed to show that his counsel's performance was ineffective. Specifically, the district court held that, although Mathews satisfied the "prejudice" prong of the test for ineffective assistance of counsel, he failed to demonstrate that counsel's failure to pursue a motion to suppress based on the warrant's lack of a signature constituted "deficient performance."

## II.

### ISSUES ON APPEAL

The following issues are raised on appeal:

A. Whether the district court's denial of Mathews's post-conviction petition is inconsistent with this Court's opinion in *Mathews II*.

B. Whether Mathews was denied the effective assistance of counsel as guaranteed by both the United States and Idaho Constitutions, resulting in an involuntary guilty plea.

C. Whether, in the alternative, Mathews should be entitled to withdraw his guilty plea because the misconduct of the police, prosecution, and magistrate deprived Mathews of his right to due process and a fair trial.

D. Whether Mathews should be entitled to withdraw his guilty plea because the execution of a state court search warrant within Indian country, without tribal court approval, violated Indian tribal sovereignty.

## III.

### STANDARD OF REVIEW

 Where the district court denies a petition for post-conviction relief after an evidentiary hearing, rather than summarily, the evidence must be " 'viewed most favorably to the trial court's findings.' " *Storm v. State*, 112 Idaho 718, 720, 735 P.2d 1029, 1031 (1987) (quoting *Estes v. State*, 111 Idaho 430, 434, 725 P.2d 135, 139 (1986)). Findings supported by competent and substantial evidence produced at the hearing will not be disturbed on appeal. *See Holmes v. State*, 104 Idaho 312, 313, 658 P.2d 983, 984 (Ct. App.1983). Since both parties agreed that no evidentiary hearing was necessary, the standard set forth above applies.

 On a denial of a motion to suppress, this Court will overturn a trial court's factual findings only if they are clearly erroneous. *See State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992). However, this Court exercises free review over questions of law, including whether the trial court correctly applied the law to the facts. *See id.; State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

## IV.

### ANALYSIS

A. ***Mathews II* Decided Only The Propriety Of The District Court's Summary Disposition Of Mathews's Petition For Post–Conviction Relief And Did Not Resolve Issues Of Ineffective Assistance Of Counsel, Judicial And Prosecutorial Misconduct, Or The State Court's Jurisdiction To Issue Search Warrants Within Indian Country.**

This Court in *Mathews II* did not hold that counsel's failure to pursue a motion to sup-

press based on the belatedly-signed warrant constituted ineffective assistance of counsel; rather, the Court held that a motion to suppress based on the lack of a magistrate's signature has merit and that " '[e]vidence' obtained in such an unauthorized search is not admissible." *Mathews II*, 129 Idaho at 870, 934 P.2d at 936 (1997). The Court declared the remaining issues "moot." *See id.*

"An issue is moot if it presents no justiciable controversy." *Idaho County Property Owners Ass'n., Inc. v. Syringa General Hospital Dist.*, 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991); *see also Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 356 (1982) (stating that a case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome); *Black's Law Dictionary* 1008 (6 th ed.1990) (defining moot as: "[a] subject for argument; unsettled; undecided. A moot point is one not settled by judicial decisions."). Although the Court used the word "moot," the meaning of the Court's holding was that the remaining issues were not ripe for decision since the district court had not yet ruled on the underlying issues. The Court's ultimate holding stated that "[t]he district court erred in summarily disposing of Mathews's post conviction application. We vacate and remand to the district court for further proceedings consistent with this opinion." *Mathews II*, 129 Idaho at 870, 934 P.2d at 936. The Court's directive was thus limited to vacation of the district court's opinion and order summarily disposing of the post-conviction application. The Court did not reverse or direct the district court to permit Mathews to withdraw his guilty plea. Therefore, we conclude that *Mathews II* did not resolve the issue of ineffective assistance of counsel, but instead directed the district court to resolve this issue on remand.

Further, *Mathews II* did not resolve Mathews's direct appeal of the district court's denial of his motion to suppress based on his claim that the state court lacked jurisdiction to issue a search warrant within Indian country without tribal court approval. An order granting the petition for rehearing of *Mathews I*, No. 20154, was issued August 25, 1994, and on November 29, 1994, the Court by order consolidated the appeal of the district court's summary disposal of Mathews's petition for post-conviction relief and the rehearing of *Mathews I*, No. 20154, for purposes of oral argument. The consolidated appeals were addressed in *Mathews II*, No. 21127, but that decision did not address the merits of Mathews's direct appeal. Therefore, the appeal of the district court's denial of Mathews's motion to suppress remains unresolved.

In addition, important prudential considerations militate in favor of addressing the district court's denial of Mathews's motion to suppress. First, if this Court does not address the merits of Mathews's motion to suppress, then Mathews is effectively denied the opportunity to have an appellate court rule on the propriety of the district court's denial of the motion since this Court's opinion in *Mathews I* has been withdrawn. Moreover, this absence of review would be particularly unjust to Mathews given that he entered a guilty plea only on condition that he might have the opportunity to appeal the district court's denial of the motion to suppress.

This Court issued a remittitur making its opinion in *Mathews II* final, the effect of which was to "advise the district court ... that the opinion has become final and that the district court ... shall forthwith comply with the directive of the opinion." I.A.R. 38(c). Since the opinion in *Mathews II* does not resolve or include a directive with respect to the issues in Mathews's direct appeal, the remittitur accomplishes no more than the opinion itself with respect to resolution of Mathews's direct appeal. Therefore, because the remand in *Mathews II* only addressed the district court's summary disposition of Mathews's post-conviction petition, we conclude that the issues raised in Mathews's direct appeal remain unresolved and are now considered and resolved in the present appeal.

**B. Failure Of Defense Counsel To Pursue A Motion To Suppress Evidence Based Upon The Lack Of A Magistrate's Signature On The Warrant Does Not Constitute Ineffective Assistance Of Counsel.**

Following this Court's decision in *Mathews II*, 129 Idaho 865, 934 P.2d 931 (1997), which

vacated the district court's opinion and order granting the State's motion for summary disposition, Mathews filed a motion for summary disposition of his petition for post-conviction relief based on a claim of ineffective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 13 of the Idaho Constitution. Both Mathews and his trial counsel submitted affidavits stating that defense counsel would not have advised Mathews to plead guilty to first-degree murder had counsel known that the warrant was not signed until the day following the search, and also that Mathews would not have pled guilty to first-degree murder had defense counsel informed him that the Henry residence search warrant was not signed at the time of the search.

The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984). The test for evaluating whether a criminal defendant has received the effective assistance of counsel is the two prong test found in *Strickland. See id.* Under this test, a petitioner must show both that: 1) his counsel's conduct was deficient because it fell outside the wide range of professional norms, and 2) the petitioner was prejudiced as a result of that deficient conduct. *See id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Under the Idaho Constitution, Idaho courts employ the same two-part test in assuring that a defendant receive "reasonably competent assistance of counsel." *Aragon v. State*, 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988) (quoting *Gibson v. State*, 110 Idaho 631, 635, 718 P.2d 283, 287 (1986)); *see also Carter v. State*, 108 Idaho 788, 794, 702 P.2d 826, 832 (1985). The *Strickland* standards are equally applicable to ineffective assistance claims arising out of the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 209 (1985). Applying these standards, the district court held that Mathews's plea was not the result of ineffective assistance of counsel. The district court, while finding

prejudice in light of this Court's holding in *Mathews II*, held that Mathews's counsel's performance was not constitutionally deficient.

In evaluating defense counsel's actions under the *Strickland* standard, we first address whether counsel's performance was deficient. To satisfy the deficient performance prong, the defendant is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Simply stated, the standard for evaluating attorney performance is objective reasonableness under prevailing professional norms. *See id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Aragon*, 114 Idaho at 762, 760 P.2d at 1178; *see also McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763, 773 (1970) (stating that a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases").

In assessing the reasonableness of attorney performance, judicial scrutiny must be highly deferential and every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *see Aragon*, 114 Idaho at 760, 760 P.2d at 1176. The defendant making a claim of ineffective assistance is required to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; *Aragon*, 114 Idaho at 760, 760 P.2d at 1176. Moreover, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all sig-

nificant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Thus, the question we must address is whether Mathews's counsel's failure to discover that the search warrant was not signed at the time it was executed and his consequent failure to seek suppression on that ground fell below an objective standard of reasonableness.

■■■ Mathews's principle contention in arguing that his counsel's performance was deficient is that he failed to properly investigate the circumstances surrounding the signing of the Henry residence warrant. Counsel in a criminal case has a duty to conduct adequate investigation. *See Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305, 325 (1986). Mathews points out that the *Strickland* Court referred to the "[p]revailing norms of practice as reflected in American Bar Association [ABA] standards and the like" as guides for determining what is reasonable. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The Court also stated that:

> [ABA Standards] are guides, ... but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Id.* at 688–89, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The ABA standards require defense counsel to:

> conduct a prompt investigation of the circumstances of the case and to explore all avenues.... The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

ABA STANDARDS FOR CRIMINAL JUSTICE, The Defense Function, Rule 4–4.1 (2d ed.1986). The Supreme Court in *Strickland* also stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■■■ Although defense counsel's investigation in this case did not reveal the fact that the Henry residence warrant was not signed until the day after the search, defense counsel did conduct substantial investigation regarding suppression issues relating to the issuance and execution of the Henry residence warrant. The record demonstrates that defense counsel reviewed copies of the documents in the search warrant files. He also spoke with the magistrates who issued the search warrants. In interviewing the magistrates, defense counsel learned that the magistrates had reviewed the affidavits and warrants together on January 13, 1992, but counsel did not ask specifically about when the warrants were signed, since at that time he had not noticed that the Henry residence warrant was dated January 14, 1992. It was not until the April 30, 1992 hearing on the motion to suppress that defense counsel first noticed that the date on the Henry residence warrant was different from the date on the warrant application affidavit. Counsel stated in an affidavit that when he discovered the error, he assumed that Judge Elliott had signed the Henry residence warrant on January 13, 1992 and had mistakenly written January 14, 1992. He further affied that because he felt that probable cause had existed for issuance of the search warrants based on the application affidavits, he filed a motion to suppress based only on the jurisdiction of a state court to issue a search warrant within Indian country. Taking into account the ABA standards regarding counsel's duty to investigate, we affirm the district court's finding that Mathews's trial counsel conduct-

ed reasonable pre-trial investigation regarding the issuance and execution of the Henry residence warrant.

Mathews cites *Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985), and *State v. Porter,* 130 Idaho 772, 948 P.2d 127 (1997), for the proposition that defense counsel's failure to file a motion to suppress based on the lack of a signature on the warrant constitutes ineffective assistance of counsel. In *Porter,* this Court stated that, "[d]efense counsel's failure to file a motion to suppress will constitute ineffective assistance of counsel if the reviewing court determines that the evidence at issue would have been suppressed." *Porter,* 130 Idaho at 793, 948 P.2d at 148 (citing *Carter v. State,* 108 Idaho at 795, 702 P.2d at 833). This statement, standing alone, supports Mathews's argument that his counsel's ineffectiveness was settled by this Court's decision in *Mathews II,* which determined that a magistrate's signature is required to validate a search warrant. However, a review of *Carter,* combined with consideration of the above quoted statement in the context of the Court's decision in *Porter,* reveals that Mathews's use of the statement from *Porter* misses the mark.

In *Carter,* we recognized the two-pronged test a defendant must meet in order to prevail on an ineffective assistance of counsel claim. *See Carter,* 108 Idaho at 795, 702 P.2d at 833 (recognizing that defendant must show: (1) that counsel's performance was deficient, and (2) that counsel's errors prejudiced the defense). Although the *Carter* Court held that counsel's failure to file a motion to suppress prejudiced the defendant, the Court also required a showing that counsel's failure to file the motion was deficient. *See id.* Similarly, in *Porter,* the Court recognized the necessity of satisfying both prongs of the test. *See Porter,* 130 Idaho at 791, 948 P.2d at 146. Although *Porter* contains the above quoted statement, we interpret the statement in *Porter* only to mean that the failure of counsel to file a motion to suppress will satisfy the prejudice prong of the ineffective assistance of counsel test where the reviewing court determines that the evidence at issue would have been suppressed. Following the statement in *Porter* cited by

Mathews, the *Porter* Court went on to evaluate counsel's actions under the deficient performance prong of the ineffective assistance standard finding that counsel's decision not to file a motion to suppress was simply trial strategy and thus not objectively unreasonable. *See Porter,* 130 Idaho at 793, 948 P.2d at 148.

We hold that competent and substantial evidence supports the district court's finding that defense counsel, based on his experience and direct contact with the signing magistrate, reasonably concluded, upon discovering the discrepancy in the date on the warrant, that the error was merely a clerical oversight by the magistrate not affecting the validity of the finding of probable cause. In applying a heavy measure of deference to counsel's judgments, we further hold that defense counsel's failure to conduct additional investigation regarding the signing of the warrant and his failure to file a motion to suppress on that ground was reasonable given the extent of his previous investigation of the issuance and execution of the warrants, his previous contact with the issuing magistrate, and his determination that probable cause existed to support the warrants. The reasonableness of defense counsel's failure to recognize a need to conduct additional investigation into the issuance of the warrants is further demonstrated by the unclear nature of the law at that time regarding the constitutional necessity of a signature on a search warrant. Accordingly, we hold that defense counsel's performance under the circumstances of this case was within the wide range of professionally competent assistance required by the United States and Idaho Constitutions.

In light of our holding that Mathews's counsel's performance was not deficient, it is unnecessary to decide whether counsel's performance prejudiced Mathews since both prongs of the *Strickland* test must be satisfied in order to constitute ineffective assistance of counsel. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 ("Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."). Because Mathews has failed to satisfy the

deficient performance prong as required under *Strickland,* we hold that the district court did not err in denying post-conviction relief based on Mathews's claim of ineffective assistance of counsel.

## C. The Actions Of The Magistrate, The Prosecutors, And The Police Do Not Warrant Withdrawal Of Mathews's Guilty Plea.

Mathews first argues that a domestic protection order was obtained and served by the sheriff's deputy as a pretext to search the Henry residence. The record supports the conclusion that there was a substantial basis for the issuance of the protection order, and once the order was issued it was the duty of the deputy to serve the order. *See* I.C. § 39–6310(2) ("A peace officer of the jurisdiction in which the respondent resides shall serve the respondent personally."). Even if the protection order was a pretext for searching the residence, the search warrant was not defective because the search warrant affidavit, even without the information obtained through the execution of the protection order, provided sufficient probable cause to search the Henry residence. *Cf. State v. Oakley,* 119 Idaho 1006, 1008, 812 P.2d 313, 315 (1991) (where a portion of affidavit is redacted the court should consider the rest of the affidavit as a whole to determine probable cause). The affidavit also stated that a pair of tennis shoes was observed by Irvin Falcon, a witness who saw Mathews the night of the killing. Because the domestic protection order was valid and because the affidavit provided probable cause even without the information derived from execution of the order, we find that the execution of the domestic protection order, even if pretextual, does not warrant withdrawal of Mathews's guilty plea.

Mathews next contends that his plea was involuntary because he would not have pled guilty had he known about the lack of a signature on the search warrant at the time of the plea. Mathews argues that the lack of a magistrate's signature on the Henry residence warrant at the time it was executed was covered up and not brought to the attention of the court through the deceptiveness of the police, the prosecution, and the magistrate who failed to sign the search warrant.

Mathews argues that the police intentionally executed a defective warrant, pointing out that the executing officer knew the warrant was unsigned and executed the search despite his knowledge. Mathews argues that this deception merits withdrawal of his guilty plea. Although the trial court originally relied on the affidavit of Officer Greene which controverted Mathews's assertion that the defective warrant was intentionally executed, this Court in *Mathews II,* following remand for factual findings, found that the lack of a magistrate's signature was pointed out to Officer Greene, and that in response he attempted to deceive Ms. Henry by showing her the signature on the warrant application affidavit, intending that Ms. Henry believe that he in fact possessed a signed warrant. However, the record also supports the district court's findings that Judge Elliott reviewed and signed the search warrant application affidavit presented by Officer Greene, that he determined that probable cause existed to issue a warrant to search the Henry residence, and that he intended to issue a valid warrant. It is clear that Officer Greene had firsthand knowledge of the magistrate's determination of probable cause and witnessed his good faith intention to issue a valid search warrant.

Although this Court in *Mathews II* held that the lack of a magistrate's signature on a search warrant provides grounds for suppression of evidence obtained during the search, it is important to remember in analyzing the conduct of Officer Greene, that this issue was an unsettled question of law in Idaho at the time of the search. *See Mathews II,* 129 Idaho at 869, 934 P.2d at 935. Moreover, at the time of the search there was significant authority from other jurisdictions supporting the view that the lack of a magistrate's signature on a search warrant does not necessarily invalidate the warrant. *See, e.g., Commonwealth v. Pellegrini,* 405 Mass. 86, 539 N.E.2d 514 (1989) (holding warrant valid where search warrant application affidavit was signed and probable cause existed for issuance of warrant); *Yuma County Attorney v. McGuire,* 109 Ariz. 471,

512 P.2d 14 (1973) (refusing to invalidate warrant where affidavit signed and probable cause existed). Therefore, given Officer Greene's personal knowledge of the magistrate's finding of probable cause, combined with the then unsettled issue of whether a magistrate's signature on a search warrant was necessary at the time the warrant was executed, we find that Officer Greene's conduct was not so egregious as to require that Mathews be permitted to withdraw his guilty plea.

Next, Mathews contends that the execution of the state search warrant within Indian country was an intentional violation of tribal sovereignty warranting withdrawal of his guilty plea. We decline to grant relief on this ground for two reasons. First, Part IV.D of this opinion concludes that the state court did not in fact exceed its jurisdiction. Second, the extent of a state court's jurisdiction to issue a search warrant within Indian country was an unsettled question of law at the time the warrant was executed. Therefore, we find that the police, who were left to guess at the proper course of action in this case, acted reasonably in light of the ambiguity in this complex area of the law.

 Mathews also asserts that the prosecutor and magistrate conspired to deprive him of his rights by failing to disclose the specific details about the belated signature on the Henry residence search warrant. This Court in *State v. Brown* stated that, "the prosecutor has a constitutional duty to disclose evidence that would create a reasonable doubt of guilt that did not otherwise exist." 98 Idaho 209, 212, 560 P.2d 880, 883 (1977) (citing *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); (*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Idaho Criminal Rule 16 requires the prosecutor to automatically disclose exculpatory evidence. Part (a) of the rule states that a prosecutor must disclose "any material or information within the prosecuting attorney's possession or control, or which thereafter comes into the prosecuting attorney's possession or control, which tends to negate the guilt of the accused as to the offense charged...." I.C.R. 16 (1993). In this case, information was not

affirmatively withheld. Even so, the evidence alleged to have been withheld must be material and exculpatory. The evidence Mathews argues should have been disclosed concerns the technical sufficiency of a search warrant, not his guilt or innocence of murder.

Moreover, the record does not support Mathews's assertion that the prosecutors and the magistrate intended to conceal something from defense counsel. Mathews complains that the prosecution and the magistrate failed to recognize the potential significance of the technical oversight and alert defense counsel to the potential ground for suppression of evidence. The reasonableness of their actions is evident when considering that Mathews's own counsel noticed the discrepancy in the date on the warrant yet failed to recognize its potential importance for suppression purposes. The actions of the prosecution and magistrate in this case are not so egregious as to require a withdrawal of Mathews's guilty plea. *Cf. State v. Porter*, 130 Idaho 772, 785, 948 P.2d 127, 140 (1997). Therefore, we decline to permit Mathews to withdraw his guilty plea based on his claims of police, prosecutorial, and judicial misconduct.

## D. The State District Court Had Jurisdiction To Issue A Search Warrant For The Residence Located Within Indian Country.

Criminal jurisdiction over Indians is divided among federal, state, and tribal governments. A determination of whether one or more of these sovereigns possesses criminal jurisdiction in a particular instance depends upon the type of offense committed, where the offense was committed, and whether either the perpetrator or the victim is Indian. Over a century ago, the United States Supreme Court, in *Worcester v. Georgia*, 31 U.S. 214, 6 Pet. 515, 8 L.Ed. 483 (1832), first addressed a state's efforts to extend its criminal jurisdiction to reservation land. In *Worcester*, Chief Justice Marshall stated that Indian nations were "distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged,

but guaranteed by the United States." 31 U.S. at 240, 6 Pet. at 557, 8 L.Ed. at 499. The traditional notion followed by the United States Supreme Court was that Indian tribes were separate, though dependent, nations within whose boundaries the laws of a state "can have no force." *Id.* at 243, 6 Pet. at 561, 8 L.Ed. at 501.

 It is now well established that the federal government, and Congress in particular, possesses plenary authority over Indian affairs, including the authority to limit tribal sovereignty. *See* U.S. CONST. art. I, § 8, cl. 3 (granting Congress the power to regulate Indian commerce); *Worcester,* 31 U.S. at 243, 6 Pet. at 561, 8 L.Ed. at 501 (stating that "[t]he whole intercourse between the United States and [Indian tribes] is, by our Constitution and laws, vested in the government of the United States"); *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (stating that Congress, in its exercise of power under the Indian Commerce Clause and Treaty Clause of the Constitution, has been the sole source of federal policy for Indian affairs); *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 154, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10, 29 (1980) (holding that "tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States"); *Delaware Tribal Business Committee v. Weeks,* 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977) (characterizing Congressional authority over Indian affairs as "plenary"). Although criminal matters within the exterior boundaries of an Indian reservation are generally within the exclusive jurisdiction of the tribal courts, Congress has the power to define the nature of federal, state, and tribal criminal jurisdiction within Indian country. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244, 253 (1987).

Pursuant to its plenary authority over Indian affairs, Congress passed the General Crimes Act, 18 U.S.C. § 1152 (1984), which extends the application of federal criminal law to Indian country. Congress also passed the Major Crimes Act, 18 U.S.C. § 1153 (1984), which vested federal courts with ex-clusive jurisdiction over specific enumerated crimes, including murder, occurring in Indian country where an Indian is the perpetrator. *See id.; see also State v. Marek,* 112 Idaho 860, 863, 736 P.2d 1314, 1317 (1987). In 1953, Congress enacted Public Law 280, which permitted states to assume jurisdiction over Indian affairs by affirmative legislative action. *See* Public Law No. 280, § 7, 67 Stat. 588 (1953). In 1963, Pursuant to Public Law 280, the State of Idaho enacted I.C. § 67–5101 which states:

> The state of Idaho, in accordance with the provisions of ... (Public Law 280) hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:
>
> A. Compulsory school attendance
>
> B. Juvenile delinquency and youth reha-bilitation
>
> C. Dependent, neglected and abused chil-dren
>
> D. Insanities and mental illness
>
> E. Public assistance
>
> F. Domestic relations
>
> G. Operation and management of motor vehicles upon highways and roads main-tained by the county or state, or political subdivisions thereof.

I.C. § 67–5101 (1995). It is noteworthy that the State of Idaho, under I.C. § 67–5101, did not assume jurisdiction over murder crimes or the execution of state court search war-rants within Indian country. In 1963, the Idaho legislature passed I.C. § 67–5102, which required tribal consent prior to addi-tional assumption of state jurisdiction over activities occurring within Indian country. *See* I.C. § 67–5102 (1995). Public Law 280 was later repealed by the Civil Rights Acts of 1968 and replaced by 25 U.S.C. § 1321, which likewise requires the prior consent of an Indian tribe to create additional state jurisdiction. On April 13, 1965, pursuant to I.C. § 67–5102, the Nez Perce Tribal Execu-tive Committee issued a resolution consent-

ing to the assumption, by the State of Idaho, of concurrent criminal jurisdiction within the reservation over a number of crimes, again not including murder. The Nez Perce Tribe specifically expressed its intention that the federal government retain jurisdiction over those crimes enumerated in the Major Crimes Act, 18 U.S.C. § 1153.

 Notwithstanding the limitations on state criminal jurisdiction over crimes committed within Indian country, a state possesses criminal jurisdiction over Indians who violate state laws outside of reservation boundaries. *See Organized Village of Kake v. Egan,* 369 U.S. 60, 75, 82 S.Ct. 562, 571, 7 L.Ed.2d 573, 583 (1962) ("It has never been doubted that States may punish crimes committed by Indians, even reservation Indians, outside of Indian country."); *see also DeCoteau v. District County Court,* 420 U.S. 425, 427 n. 2, 95 S.Ct. 1082, 1084 n. 2, 43 L.Ed.2d 300, 304 n. 2 (1975). Thus, outside of Indian country, state criminal jurisdiction over Indians is coextensive with the state's jurisdiction over non-Indians. *See Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114, 119 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State."). In this case, there is no dispute that the crime for which Mathews was arrested occurred in Lewiston, outside of the Nez Perce Indian Reservation. Therefore, there is no question that the State of Idaho possessed criminal jurisdiction over the prosecution of Mathews in this case. *See State v. Major,* 111 Idaho 410, 725 P.2d 115 (1986); *cf. State v. Youpee,* 103 Mont. 86, 61 P.2d 832 (1936) (holding state law applicable to an Indian accused of statutory rape of an Indian minor occurring off-reservation); *Pablo v. People,* 23 Colo. 134, 46 P. 636, 637 (1896) (holding state law applicable to Ute Indian murder of another Ute occurring off-reservation). It is also noteworthy that the state court, pursuant to I.C.R. 41, had the authority to issue search warrants within the exterior boundaries of its jurisdiction. *See* I.C.R. 41(a).

However, the question we must answer in this case is whether a state court may issue a warrant to search within Indian country without tribal court approval where the state court has jurisdiction over the underlying crime which was committed outside of reservation boundaries. While Congress has provided a substantial statutory framework for determining when a state court has jurisdiction over a particular crime, Congress has not addressed whether state jurisdiction over a particular crime extends to searches of Indian property within Indian country for evidence of the crime.

Although early decisions of the United States Supreme Court required congressional consent for the exercise of state jurisdiction over Indian country, "Congress has to a substantial degree opened the doors of reservations to state laws, in marked contrast to what prevailed in the time of Chief Justice Marshall." *Organized Village of Kake,* 369 U.S. at 74, 82 S.Ct. at 570, 7 L.Ed.2d at 583. The Court has stated repeatedly that, "even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Mescalero Apache Tribe,* 411 U.S. at 148, 93 S.Ct. at 1270, 36 L.Ed.2d at 119; *see also Organized Village of Kake,* 369 U.S. at 75, 82 S.Ct. at 570, 7 L.Ed.2d at 583; *New York ex rel. Ray v. Martin,* 326 U.S. 496, 499, 66 S.Ct. 307, 90 L.Ed. 261, 263 (1946); *Draper v. United States,* 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896). *But see Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (holding that state has no jurisdiction over civil suit by non-Indian against Indian where cause of action arises on Indian reservation).

 More recent cases from the Supreme Court have established a "trend ... away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption." *McClanahan,* 411 U.S. at 172, 93 S.Ct. at 1262, 36 L.Ed.2d at 135. This preemption analysis is unique in that it does not necessarily reflect "those standards of pre-emption that have emerged in other areas of the law." *White Mountain Apache Tribe v. Bracker,*

448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 672 (1980). In addition, the Supreme Court has employed a preemption analysis that is informed by historical notions of tribal sovereignty. *See Rice v. Rehner,* 463 U.S. 713, 718, 103 S.Ct. 3291, 3295, 77 L.Ed.2d 961, 969 (1983). Although the "right of tribal self-government is ultimately dependent on and subject to the broad power of Congress," *Bracker,* 448 U.S. at 143, 100 S.Ct. at 2583, 65 L.Ed.2d at 672, the tradition of Indian sovereignty serves as a "backdrop against which the applicable treaties and federal statutes must be read" in the preemption analysis. *McClanahan,* 411 U.S. at 172, 93 S.Ct. at 1262, 36 L.Ed.2d at 136. The Supreme Court's decisions dictate that there are "two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members". *Bracker,* 448 U.S. at 142, 100 S.Ct. at 2583, 65 L.Ed.2d at 672. The exercise of state authority may unlawfully infringe on the right of reservation Indians to make their own laws and be ruled by them, or may be preempted by federal law. *See id.* Thus, the question whether a state has unlawfully exercised jurisdiction within Indian country is analyzed according to a legal and functional approach rather than a territorial analysis.

■ Where a state court has jurisdiction over the underlying crime which was committed on an Indian reservation, the state court has jurisdiction to issue a warrant to search an area within the exterior boundaries of the reservation. *See Kaul v. Stephan,* 83 F.3d 1208, 1216–18 (10th Cir.1996). In *Kaul,* the Tenth Circuit held that the State of Kansas, pursuant to a Congressional delegation of jurisdiction over crimes committed by or against Indians on Indian reservations, had jurisdiction to execute search warrants within the reservation pursuant to an exercise of the state's jurisdiction. *See id.* at 1216–17. The Supreme Court has also recognized that a state, even absent a Congressional delegation of jurisdiction over crimes occurring within Indian country, may exercise jurisdiction over a crime committed within Indian country by non-Indians against non-Indians. *See United States v. McBratney,* 104 U.S. 621, 624, 26 L.Ed. 869, 870 (1881). However, a state court may not issue

a warrant to search an area within Indian country where the state does not have jurisdiction over the underlying crime. *See United States v. Baker,* 894 F.2d 1144, 1146 (10th Cir.1990); *Ross v. Neff,* 905 F.2d 1349 (10th Cir.1990) (holding that the State of Oklahoma did not have jurisdiction to make an arrest within Indian country where the state had neither received by express grant nor acted pursuant to congressional authorization to assume criminal jurisdiction over the reservation); *Sycuan Band of Mission Indians v. Roache,* 788 F.Supp. 1498, 1507 (S.D.Cal. 1992) ("A state is without authority to engage in preliminary law enforcement activities if the state is without jurisdiction to prosecute a violation."), *aff'd* 38 F.3d 402 (9th Cir.1994), *amended, reh'g denied* 54 F.3d 535 (9th Cir. 1994).

■ However, neither the United States Supreme Court nor this Court has addressed the issue whether a state court has jurisdiction to issue a warrant for a search within Indian country, without tribal court approval, where the underlying crime occurred outside of Indian country and within state court jurisdiction. Therefore, in the absence of a controlling federal statute or precedent from the Supreme Court, we apply a preemption analysis, asking whether the execution of the Henry residence search warrant within the Nez Perce Indian Reservation either unlawfully infringed on the right of reservation Indians to make their own laws and be ruled by them, or is preempted by federal law. We first address whether the execution of the Henry residence search warrant within the Nez Perce Indian Reservation infringed on the right of the Nez Perce tribal members to govern themselves. The record demonstrates that prior to executing the search warrant, state law enforcement officers attempted to discover the proper procedure for executing the Henry residence search warrant. The sensitivity of state law enforcement officers to Nez Perce tribal sovereignty is demonstrated by their efforts to obtain direction from the BIA, the tribal prosecutor, the Idaho Attorney General's office, and the United States Attorney's office. In this case, the Nez Perce Law and Order Code did not establish a requirement or a procedure gov-

erning the execution of state court issued warrants authorizing searches within Indian country in the investigation of crimes allegedly committed by Nez Perce tribal members outside the reservation. In this absence of a governing tribal procedure, state law enforcement officers seeking to exercise their jurisdiction over a murder committed outside of Indian country were left to guess at the appropriate course of action.

Other courts addressing this issue in similar contexts have focused their analysis on the existence of a tribal procedure addressing the execution of state process pursuant to state court jurisdiction over the underlying crime. In *State ex rel. Merrill v. Turtle*, 413 F.2d 683 (9th Cir.1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970), the court reviewed the validity of a state's extradition of an Indian defendant from the reservation. The court in *Merrill* recognized that the validity of the state's exercise of jurisdiction within Indian country "must be determined in light of whether such exercise would 'infring[e] on the right of reservation Indians to make their own laws and be ruled by them.'" *Id.* at 685 (citing *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959)). The Ninth Circuit, applying this analysis, held that the state's exercise of jurisdiction infringed on the Indians' right to self-government where the tribe had an established extradition procedure which was not followed by the state. However, in *State ex rel. Old Elk v. District Court of Big Horn*, 170 Mont. 208, 552 P.2d 1394, 1398 (1976), the court held that the execution of a state arrest warrant for an Indian within Indian country was valid in the absence of tribal court procedure governing extradition. Thus, the courts addressing the exercise of state arrest jurisdiction within Indian country have found that a determination of whether such an exercise of state authority infringes on tribal sovereignty turns on the existence of a governing tribal procedure.

█ We agree with the view that tribal sovereignty is not infringed when a state court issued search warrant is executed within Indian country where the state possesses jurisdiction over the underlying crime and where tribal law does not provide a procedure for executing the warrant within Indian country. In this case, the Nez Perce tribe did not have a procedure in place regulating the execution of state search warrants in cases involving Indians who had committed crimes outside of the reservation. Therefore, given the lack of an established procedure in the Nez Perce Tribal Code, we hold that the execution of the Henry residence search warrant in this case did not infringe on the right of the Nez Perce Tribe to govern itself.

█ The second prong of the analysis requires a determination whether the state action is preempted by federal law. "State jurisdiction is preempted ... if it interferes or is incompatible with federal and tribal interests reflected in federal law." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334, 103 S.Ct. 2378, 2386, 76 L.Ed.2d 611, 620 (1983); *see also Cabazon Band of Mission Indians*, 480 U.S. at 216, 107 S.Ct. at 1091, 94 L.Ed.2d at 259. Federal law is silent on this issue. While there is a significant body of federal law that defines federal, tribal, and state jurisdiction over particular crimes committed by or against Indians within Indian country, there is a paucity of federal law addressing the execution of valid state process within Indian country. The mere existence of federal law which simply establishes the Nez Perce Tribal Court cannot be said to represent a specific statutory plan preempting the State of Idaho from executing a search warrant in a case where the state has jurisdiction over the underlying crime. Therefore, we hold that, in the absence of an established tribal procedure, the state court's issuance and execution of a search warrant for a search within the Nez Perce Indian Reservation neither unlawfully undermines the tribe's self-governance nor conflicts with federal law. Therefore, the district court did not err in denying Mathews's motion to suppress.

## V.

## CONCLUSION

Based on the foregoing conclusions, we affirm the district court's order denying Mathews's petition for post-conviction relief,

and we affirm the district court's denial of Mathews's motion to suppress.

Justices SCHROEDER and WALTERS, and Justice Pro Tem CAREY, concur.

Justice Pro Tem JOHNSON, Dissenting.

I respectfully dissent.

In my view *Mathews II* dictates the result of these appeals. Even if it did not, I would conclude that the failure of defense counsel to pursue a motion to suppress evidence based on the lack of a magistrate judge's signature on the warrant did constitute ineffective assistance of counsel. Also, I would conclude that the execution of the search warrants for search of residences located on the Nez Perce Indian Reservation without approval of the tribal court infringed upon the tribe's sovereignty and right to self-government.

By an order dated November 29, 1994, this Court consolidated "for purposes of argument" the rehearing of the direct appeal (*Mathews I*), No. 20154, and the appeal of the summary dismissal of the post-conviction petition, No. 21127. The remittitur in *Mathews II* disposed of the appeals in both *Mathews I*, No. 20154, and the summary dismissal of the post-conviction petition, No. 21127. The opinion in *Mathews II* addresses only the merits of the issues raised in No. 21127, the post-conviction appeal. Part V of the *Mathews II* opinion, including the title of the part, reads as follows:

### V.

### REMAINING ISSUES RAISED ON POST–TRIAL HEARING APPEAL AND APPEAL FROM JUDGMENT OF CONVICTION

Having found the warrant deficient, we need not address the balance of the issues raised on appeal as they are rendered moot.

This clearly indicates that those of us who concurred in the opinion intended that the resolution of the post-conviction appeal, referred to as the "post-trial hearing appeal," resolved both appeals. I believe this is made even clearer by Part VI of the opinion in *Mathews II*, which reads as follows:

### VI.

### CONCLUSION

The district court erred in summarily disposing of Mathews's postconviction application. We vacate and remand to the district court for further proceedings consistent with this opinion.

This disposition necessarily assumes that the trial court would grant the post-conviction relief sought. Otherwise, there was no reason to declare that the issues in the direct appeal were "rendered moot." The legend on the slip opinion issued by the Court in *Mathews II* states as follows: "SUBSTITUTE OPINION ON REHEARING 1994 OPINION NO. 91, FILED JULY 18, 1994, IS HEREBY WITHDRAWN." This meant that the Court found no further reason to rule on the direct appeal because of its disposition of the post-conviction appeal. The remittitur making the opinion in *Mathews II* a final disposition of the direct appeal makes this even more clear, when it states:

The Court having announced its Opinion in this cause July 18, 1994, and its Substitute opinion on March 20, 1997, which withdraws the earlier opinion and which is now FINAL; therefore,

IT IS HEREBY ORDERED the District Court shall forthwith comply with the directive of the Substituted Opinion, if any action is required.

Because the Court declared the issues raised in the direct appeal from the conditional plea to be moot and addressed only the issues raised in the post-conviction appeal, the remand necessarily directed the trial court to address only the relief sought in the post-conviction appeal. *See Walters v. Industrial Indem. Co.*, 130 Idaho 836, 838, 949 P.2d 223, 225 (1997).

Concerning the ineffective assistance of counsel claim, while we might defer to a decision of counsel not to file a suppression motion if counsel had investigated all the facts and found a strategic reason not to do so, that is not the case here. In his affidavit

to the trial court in the post-conviction case, Mathews's trial counsel stated as follows:

That had I discovered that [the magistrate judge] had not actually signed the search warrant for the Henry residence in Lapwai, Idaho until January 14, 1992 I would have raised the issue in the Motion to Suppress Evidence. That I would not have allowed Marcus W. Mathews to plead guilty to the charge of First Degree Murder without first raising the issue of the date on the search warrant.

In my view, trial counsel's failure to investigate to verify whether the magistrate judge had signed the warrant was a clear violation of the ABA Standards, Defense Function, 4–4.1.

I would also conclude that the execution of state search warrants on reservation land infringes on tribal sovereignty and right to self-government. The execution of the state search warrants in this case without tribal court approval denied the tribal court the opportunity to exercise tribal authority to control searches of Indian property located on the reservation. Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. *See United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706, 716 (1975). These natural rights include the power to enact their own laws for the government of their people, and to establish courts to enforce them. *See Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251, 253 (1959). The actions of the State of Idaho in this case in executing the warrants on the Nez Perce Indian Reservation infringed on this right of the Nez Perce to make their own laws and be ruled by them, specifically, on their right to regulate searches of Indian property located on the reservation.

In her affidavit, the judge of the Nez Perce Tribal Court stated that it was her understanding that state search warrants were presented to the tribal court for approval prior to execution, and that, in the past, other search warrants executed by the state on the reservation had been presented for her review. She stated that she would concur with a warrant presented to her by non-

tribal authorities if it complied with the Tribal Law and Order Code. The state officers in this case were aware that the tribal judge had been contacted concerning the warrants and was on her way to review them. Their conscious decision to proceed with the search without the authorization of the tribal court directly infringed on the tribe's sovereignty and right to self-government.